Citation Nr: 1121874 
Decision Date: 06/06/11 Archive Date: 06/20/11

DOCKET NO. 09-01 237 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUE

Entitlement to service connection for a right shoulder disability. 


REPRESENTATION

Appellant represented by: Pennsylvania Department of Military and Veterans Affairs


ATTORNEY FOR THE BOARD

Nicole Klassen, Associate Counsel






INTRODUCTION

The Veteran served on active duty from October 1968 to July 1970. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a December 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Pittsburgh, Pennsylvania, which denied the Veteran's petition to reopen his claim of entitlement to service connection for right shoulder dislocation. In this regard, the Board notes that the RO characterized the issue on appeal as an application to reopen a claim of entitlement to service connection for right shoulder dislocation based on the receipt of new and material evidence. Additionally, the Board notes that the Veteran's claim of entitlement to service connection for a right shoulder condition was initially denied by a final RO decision dated in December 1974. See 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. § 20.1103 (2010). Significantly, however, following the December 1974 RO decision, in January 2009, additional relevant service personnel records were obtained, which were in existence at the time of the December 1974 RO decision, but which had not previously been associated with the claims file. Thus, rather than determining whether new and material evidence has been submitted to reopen the Veteran's right shoulder disability claim, a de novo review of the issue of entitlement to service connection for a right shoulder disability is warranted, and the issue on appeal is as stated on the cover sheet. See 38 C.F.R. § 3.156(c)(ii) (2010). 

When this case was initially before the Board in March 2010, it was remanded for further development. 
 
The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


REMAND

Unfortunately, another remand is required in this case. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record on which to decide the Veteran's claim so that he is afforded every possible consideration. For the reasons set forth below, the Board finds that additional development is required in this case. Specifically, on remand, further attempts should be made to obtain a complete copy of the Veteran's private and VA treatment records, and the Veteran should be afforded a VA examination assessing the etiology of his right shoulder disability. 

The Veteran essentially contends that his current right shoulder disability was incurred during, or aggravated by, military service. In this regard, he has indicated that although he had a right shoulder injury prior to service, he was asymptomatic when he entered service in October 1968, and that his shoulder began dislocating during training exercises, such as those that involved overhead lifting and reaching. See December 2006 claim and March 2011 statement. In support of this contention, the Veteran has reported that, during service, he received treatment for his right shoulder pain and instability on several occasions, which resulted in a diagnosis of a torn right rotator cuff, and placement on a permanent no overhead lifting profile for the remainder of his military service. See August 2008 notice of disagreement, January 2009 substantive appeal, and March 2011 statement. In this regard, the Veteran has reported that, despite the physical profile, his right shoulder continued to worsen and come out of socket during the remainder of his military service. See March 2011 statement. The Veteran has also reported that, since service, he has continued to experience recurrent shoulder instability, and that as result of his recurrent dislocations during service, he had to undergo right shoulder surgery only four years after separation from service. See January 2009 substantive appeal and March 2011 statement. 

At the outset, the Board notes that pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA is obliged to provide a medical examination and/or get a medical opinion when the record contains competent evidence that the claimant has a current disability; the record indicates that the disability, or signs and symptoms of disability, may be associated with active service; and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A (d) (West 2002); McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

In this case, a review of the Veteran's service treatment records shows that, upon entry into service in October 1968, the Veteran denied having a history of a painful or "trick" shoulder, and was found to have normal upper extremities, with no shoulder disabilities or injuries noted on his entrance examination. In this regard, the Board points out that, insofar as an examination of the Veteran's upper extremities was found to be normal at the time of his entry into service, the Veteran is entitled to the presumption of soundness with respect to his right shoulder disability. 38 U.S.C.A. § 1111 (West 2002); 38 C.F.R. § 3.304(b) (2010). 

Additionally, the Veteran's service treatment records show that he was treated for recurrent right shoulder dislocation in February 1969, at which time the Veteran reported that he had been in a motorcycle accident in 1968. The following week, the Veteran sought follow-up treatment for his right shoulder, at which time the doctor reported that the Veteran had a history of frequent dislocation in the past and a history of easy dislocation of the right shoulder during service with the use of overhead bars. Based on this evaluation, the doctor diagnosed the Veteran with mild instability of the right shoulder, and placed the Veteran on a permanent U2 profile, which prohibited overhead bar work, rope climbing, and any other work requiring overhead use of the right arm. 

Thereafter, in August 1969, the Veteran received emergency treatment for his right shoulder, reporting that he had a history of frequent dislocation of the right shoulder for which he was on a permanent profile. At that time, the Veteran reported that his shoulder had dislocated the day before and was currently tender, and the doctor noted that the Veteran's right shoulder dislocated without significant trauma. X-rays conducted at that time were negative. Based on this evaluation, the doctor reported that the Veteran probably had recurrent dislocation, even though he was currently on profile, and as such, should avoid abduction, extension, and rotation of the shoulder. Finally, the doctor reported that the Veteran would be evacuated for surgery only under certain circumstances; unfortunately, however, the portion of the treatment record in which the doctor outlined such circumstances is illegible. 

Finally, the Veteran's service treatment records reveal that, at the time of his separation examination in July 1970, an examination of his upper extremities was again found to be normal, with no shoulder disabilities or injuries noted. 

Post service, in December 1970, the Veteran was afforded a general VA examination. At that time, the Veteran reported that he had a prior history of right shoulder dislocation that he been aggravated during service due to training exercises and his military duties. Based on this examination, the examiner diagnosed the Veteran with a history of a right shoulder condition with no current clinical findings. 

Thereafter, in April 1974, the Veteran sought hospital treatment for his right shoulder at the Medical Center of Beaver County, where he was treated by Dr. Lehman. At that time, Dr. Lehman reported that he had seen the Veteran several weeks earlier for discomfort in his right shoulder, which he had reportedly injured and/or aggravated a year prior while at work. In this regard, the Veteran reported that, since that time, he had experienced several episodes of his shoulder either dislocating or feeling as if it would dislocate. On examination, the Veteran had considerable instability with a tendency towards posterior subluxation and anterior dislocation. Additionally, x-rays conducted at that time indicated that the Veteran had a very unstable shoulder with a recurrent anterior dislocation. As such, Dr. Lehman diagnosed the Veteran with recurrent dislocation of the right shoulder, and admitted him for right shoulder surgery, which consisted of shoulder repair using the Magnuson-Stock procedure. 

Subsequently, in March 2004, the Veteran received emergency medical treatment for a right shoulder injury from Dr. Denise Ramponi. At that time, the Veteran reported that he had fallen and landed on his right elbow, jamming his right shoulder. In this regard, the Veteran reported that he currently had right shoulder pain, which was moderate in severity, and that he was concerned because he had a previous right rotator cuff injury and had heard a snap at the time of the fall. Dr. Ramponi noted that the Veteran had undergone a torn rotator cuff repair surgery in 1974. After discussing his pertinent medical history and the findings of his physical examination, Dr. Ramponi diagnosed the Veteran with a strain of the rotator cuff of the right shoulder, which was treated with Motrin, rest, and ice. 

The following month, in April 2004, the Veteran sought treatment for his right shoulder pain at Heritage Valley Rehabilitation. At that time, he reported that he had fallen at work a month earlier, and that he had been experiencing constant shoulder pain since, which was aggravated by overhead lifting and reaching. On examination, the Veteran had moderate anterior shoulder pain on palpation and a negative arm drop test. Based on this evaluation, the doctor diagnosed the Veteran with degenerative joint disease (DJD), for which he received fairly regular rehabilitation treatment through August 2004. 

Additionally, in July 2004, the Veteran sought treatment for his right shoulder from Dr. Jeffrey B. Mulholland. At that time, the Veteran reported that, in March 2004, he had been walking on some boulders while working as a land surveyor when he lost his balance and fell onto his outstretched right arm. In this regard, the Veteran reported that, since this fall, he had been experiencing aching right shoulder pain in the anterior aspect of his shoulder that was radiating to the back of the posterior shoulder blade and coming down his arm. X-rays conducted at that time revealed arthritis of the shoulder; however, the Veteran reported that he had been told that this was not from his work-related injury. In this regard, Dr. Mulholland reported that the Veteran had undergone a successful stabilization procedure in 1974, with what appeared to be a Bristow repair for recurrent anterior instability. Based on this evaluation, Dr. Mulholland diagnosed the Veteran with right shoulder osteoarthritis. Dr. Mulholland then went on to report that insofar as the Veteran denied having any osteoarthritis symptoms prior to March 2004, it was his opinion that the Veteran's current symptomatology was an acute exacerbation of a chronic condition, or aggravation of an underlying condition. Finally, Dr. Mulholland advised the Veteran that, if his pain prevented him from returning to work, he might be a candidate for right shoulder hemiarthroplasty and removal of hardware in the right proximal humerus. 

Thereafter, during VA treatment in November 2004, the Veteran reported having right shoulder pain with a history of several dislocations, for which he was being followed by an orthopedic surgeon and was taking Darvocet daily. The doctor noted that the Veteran had a past medical history significant for DJD and right shoulder dislocation, status-post surgery with pin placement approximately ten years prior. Based on this evaluation, the doctor diagnosed the Veteran with pain in his right shoulder, for which he was considering surgery and/or physical therapy. 

Then, in January 2006, at his annual VA examination, the Veteran reported that one of his chief complaints was pain in his right shoulder underneath the scapula. In this regard, the Veteran reported having previously undergone right rotator cuff repair surgery, which resulted in him currently having pins in his shoulder. Additionally, the Veteran reported that he was unsure if he had sustained an injury at work, but indicated that he did do heavy lifting at his construction job. Based on this evaluation, the doctor diagnosed the Veteran with DJD of the right shoulder. 

Thereafter, from July 2006 to March 2007, the Veteran received chiropractic treatment for his low back from Dr. Richard Tsai at Blackhawk Chiropractic. Of note, in a March 2007 letter, Dr. Tsai reported that, during the Veteran's initial consultation for low back pain, he had reported having right shoulder pain since the 1970s, which had resulted from an injury during in-service physical training drills. Specifically, the Veteran indicated that he had injured his shoulder while doing overhead bar exercises, and as such, had been placed on modified duty and had been advised by two military doctors that he should undergo shoulder replacement surgery, but that he had opted to wait until after service. Dr. Tsai then went on to report that he had not addressed the Veteran's right shoulder during treatment as it hurt the Veteran too badly when he attempted to work on it, and as such, he had modified the Veteran's low back treatment because the Veteran was unable to lie on his shoulder. 

On this record, the Board finds that a VA examination and opinion addressing the etiology of the Veteran's right shoulder disability is necessary before the Board renders a decision in this case. In making this determination, the Board highlights that, in addition to the foregoing evidence of record, the Veteran has provided competent reports of a continuity of right shoulder symptomatology (i.e., pain and recurrent instability and/or dislocation) since service. See Barr v. Nicholson, 21 Vet. App. 303, 307-08 (2007) (holding that lay testimony is competent to establish the presence of observable symptomatology); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept. 14, 2009). As such, because there is competent evidence of record indicating that the Veteran was treated for right shoulder instability and dislocation during service, and was placed on a permanent profile for his right shoulder from February 1969 to July 1970; evidence of intermittent post-service treatment for right shoulder instability and dislocation, including evidence of a right shoulder surgery less than four years after separation from service; and competent reports of a continuity of symptomatology since service, the Board finds that a medical opinion addressing the etiology of the Veteran's right shoulder condition is necessary to make a determination in this case. See 38 U.S.C.A. § 5103A (d); McLendon v. Nicholson, 20 Vet. App. 79 (2006).
 
Additionally, the Board notes that a review of the record reveals that some of the Veteran's relevant private treatment records have not yet been associated with the claims file. Specifically, during VA treatment in November 2004 and January 2006, the doctor noted that the Veteran was followed by a private care physician, Dr. Kalenak, who had prescribed him medication for his right shoulder. Additionally, during VA treatment in January 2006, the doctor noted that the Veteran was also currently being followed by another private doctor, Dr. Smith. Significantly, however, to date, none of Dr. Kalenak's or Dr. Smith's treatment records have been associated with the claims file. Further, the Board notes that, according to the April 1974 surgery report, the Veteran had initially received treatment for his right shoulder discomfort from Dr. Lehman several weeks earlier. Significantly, however, to date, the only treatment record currently on file from Dr. Lehman is the April 1974 surgery report. In this regard, the Board acknowledges that, in August 2010 and September 2010, the RO attempted to contact Dr. Lehman at an address provided by the Veteran; however, both of these letters were returned to the sender as undeliverable, and as such, to date, a complete copy of Dr. Lehman's treatment records has not been associated with the claims file. Accordingly, on remand, further efforts should be made to obtain a complete copy of all of the Veteran's outstanding private treatment records. See 38 U.S.C.A. § 5103A(b)(1); 38 C.F.R. § 3.159(c)(1). 

Finally, as this case must be remanded for the foregoing reasons, on remand, copies of any recent VA treatment records regarding the Veteran's right shoulder disability should also be obtained. See 38 U.S.C.A. § 5103A(b)(1); 38 C.F.R. § 3.159(c)(2). In this regard, the Board notes that the most recent VA treatment records on file are dated in February 2010. 

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and request that he identify the names, addresses, and approximate dates of treatment with respect to all private health care providers who have treated his right shoulder disability, to specifically include treatment records from 1) Dr. Lehman, dated from 1970 to April 1974; 2) Dr. Kalenak; and 3) Dr. Smith. Following the receipt of any necessary authorizations from the Veteran, attempt to obtain any medical records identified by the Veteran. If these records are not available, request that the doctors provide a negative reply. Additionally, if these records are unavailable, the Veteran should be notified in accordance with 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. § 3.159(e). 

2. The RO/AMC should make arrangements to obtain a complete copy of the Veteran's treatment records regarding his right shoulder disability from the VA Medical Center in Pittsburg, Pennsylvania, and the Beaver VA Community Based Outpatient Clinic (CBOC) Primary Care Center located in Aliquippa, Pennsylvania, dated from February 2010, forward. 

3. Once the foregoing development has been completed, schedule the Veteran for a VA orthopedic examination regarding his right shoulder. The claims file and a copy of this remand must be made available to and reviewed by the examiner in conjunction with the examination. 

After conducting an examination of the Veteran and performing any clinically-indicated diagnostic testing, the examiner should provide an opinion as to the diagnosis of any right shoulder disabilities found to be present. In this regard, the Board notes that the record reflects that the Veteran has been diagnosed with right shoulder DJD, osteoarthritis, recurrent dislocation, and rotator cuff strain. 

The examiner should also provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that any current right shoulder disability had its clinical onset during active service or is related to any in-service disease, event, or injury. In doing so, the examiner should discuss the significance, if any, of the Veteran's in-service treatment for recurrent right shoulder dislocation in February 1969 and August 1969, and the Veteran's placement on a permanent U2 profile, which prohibited any overhead bar work, rope climbing, and any other work requiring overhead use of the right arm, from February 1969 to July 1970. The examiner should also specifically acknowledge and discuss the fact that the Veteran underwent right shoulder stabilization surgery in April 1974, less than four years following separation from service, and the Veteran's reports (which for purposes of providing this opinion, should be accepted as credible) that his right shoulder symptomatology (i.e., pain, instability, and recurrent dislocation) has continued since service. 

Additionally, in providing this opinion, the examiner should reconcile his findings with the other medical opinions of record, including Dr. Mulholland's July 2004 opinion that the Veteran's symptomatology at that time was an acute exacerbation of a chronic condition, or aggravation of an underlying condition. 

The examiner must provide a comprehensive report including complete rationales for all opinions and conclusions reached, citing the objective medical findings leading to the conclusions.

4. Then, review the Veteran's claims folder and ensure that all of the foregoing development actions have been conducted and completed in full. If any development is incomplete, appropriate corrective action is to be implemented. Specific attention is directed to the examination report. If the requested report does not include adequate responses to the specific opinions requested, it must be returned for corrective action.

5. Finally, readjudicate the Veteran's claim on appeal. If the benefit sought on appeal is not granted in full, provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate time for response.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate



action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).




_________________________________________________
Michael J. Skaltsounis
Acting Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).