Citation Nr: 1228231 
Decision Date: 08/16/12 Archive Date: 08/21/12

DOCKET NO. 08-39 942 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUES

1. Whether new and material evidence has been received with respect to a claim for service connection for breast cancer. 

2. Entitlement to service connection for residuals of breast cancer. 

3. Entitlement to service connection for hypertension.

4. Entitlement to service connection for a skin disability.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J. N. Moats, Counsel


INTRODUCTION

The Veteran had active service from May 1987 to September 1987, January 1991 to October 1991 and January 2003 to January 2004. She also had additional service in the Reserves. 

This matter comes before the Board of Veterans' Appeal (Board) on appeal from a February 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana. The Veteran testified at a personal RO hearing in April 2009. The hearing transcript has been associated with the record. 

The issues of service connection for posttraumatic stress disorder (PTSD) and headaches were also on appeal. However, a subsequent rating decision in August 2009 granted service connection for these disabilities. Thus, as this was a full grant of the benefits sought on appeal, these issues are no longer in appellate status. 

The issues of entitlement to service connection for residuals of breast cancer and skin disability are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.



FINDINGS OF FACT

1. In a September 1997 rating decision, the RO denied service connection for breast cancer; the Veteran submitted a notice of disagreement and the RO issued a statement of the case in November 1997, but the Veteran failed to file a substantive appeal and no new and material evidence was received prior to expiration of the appeals period.

2. The additional evidence received since the September 1997 rating decision denying the claim of service connection for breast cancer relates to unestablished facts necessary to substantiate the claim.

3. Hypertension manifested during active duty service.


CONCLUSIONS OF LAW

1. The September 1997 rating decision denying the application for service connection for breast cancer, became final. 38 U.S.C.A. § 7105(c) (West 2002 & Supp. 2011); 38 C.F.R. § 20.200, 20.201, 20.302 (2011).

2. The additional evidence presented since the September 1997 rating decision is new and material, and the claim for service connection for breast cancer is reopened. 38 U.S.C.A. § 5108 (West 2002 & Supp. 2011); 38 C.F.R. § 3.156 (2011).

3. Hypertension was incurred in the Veteran's active duty service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2011).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

New and Material Evidence for Breast Cancer

The present appeal includes the issue of whether new and material evidence has been received with respect to a claim of entitlement to service connection for breast cancer. Applicable law provides that a claim which is the subject of a prior final decision may nevertheless be reopened if new and material evidence is presented or secured. 38 U.S.C.A. § 5108. New evidence means evidence not previously submitted. Material evidence means existing evidence that by itself or when considered with previous evidence relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of last final decision, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

In determining whether the evidence is new and material, the specified basis for the last final disallowance must be considered. Hodge v. West, 155 F. 3d 1356, 1363 (Fed. Cir. 1998). For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence, although not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

If new and material evidence is received during an applicable appellate period following a RO decision (1 year for a rating decision and 60 days for a statement of the case (SOC)) or prior to an appellate (Board) decision (if an appeal was timely filed), the new and material evidence will be considered as having been filed in connection with the claim that was pending at the beginning of the appeal period. 38 C.F.R. § 3.156(b). Thus, under 38 C.F.R. § 3.156(b), "VA must evaluate submissions received during the relevant [appeal] period and determine whether they contain new evidence relevant to a pending claim, whether or not the relevant submission might otherwise support a new claim." Bond v. Shinseki, 659 F.3d 1362, 1367-68 (Fed. Cir. 2011). "[N]ew and material evidence" under 38 C.F.R. § 3.156(b) has the same meaning as "new and material evidence" as defined in 38 C.F.R. § 3.156(a). See Young v. Shinseki, 22 Vet. App. 461, 468 (2011).

Further, under VA regulations, if VA receives or associates with the claims folder relevant official service department records at any time after a decision is issued on a claim that had not been associated with the claims folder when VA first decided the claim, VA must reconsider the claim. 38 C.F.R. § 3.156(c). This regulation contemplates official service department records which presumably have been misplaced and have now been located and forwarded to VA. Id. In essence, the finality of any previous decision is vitiated by the association of additional, pertinent service department records, and the claim must be reconsidered. 

The RO denied service connection for breast cancer in a September 1997 rating decision. The Veteran appealed this issue and the RO issued a statement of the case in November 1997. However, she failed to file a substantive appeal. Moreover, new and material evidence was not received prior to the expiration of the appeals period so the provisions of 38 C.F.R. § 3.156(b) are not applicable to this analysis. The next evidence in the claims file following the November 1997 SOC is a congressional inquiry dated in October 1999. 

Further, although additional service records were associated with the claims file after the September 1997 rating decision, these records were from her most recent period of active duty service and were not in existence at the time of the prior September 1997 rating decision and, in turn, are not pertinent to her claim. Thus, the provisions of 38 C.F.R. § 3.156(c) are not applicable. Under these circumstances, the Board must find that the September 1997 rating decision became final. 38 U.S.C.A. § 7105(c). 

The Veteran asserts that exposure to environmental hazards while stationed in the Southwest Asia Theatre of Operations during her second period of active duty caused her breast cancer. Prior to the September 1997 rating decision, private treatment records showed treatment for breast cancer. The Veteran was afforded a VA examination in February 1997 for her breast cancer. However, the examiner did not provide an etiological opinion. 

Since the September 1997 rating decision, additional evidence has become part of the record, including further private and VA treatment records and the Veteran's RO hearing testimony. At the April 2009 RO hearing, the Veteran expressed the belief that her breast cancer was due to exposure to chemicals from burning oil fields, pesticides, and vaccines administered during her first period of service in the Southwest Asia Theatre of Operations. She also testified that two other females in her unit had been diagnosed with breast cancer and that her oncologist at the VA had indicated a relationship between her service in Southwest Asia and her breast cancer. A July 2008 VA treatment record showed a notation that the Veteran believed her cancer was related to her tour of duty with exposure to chemicals. 
 
In Shade v. Shinseki, 24 Vet. App 110 (2010), the Court, interpreted the language of 38 C.F.R. § 3.156(a) as creating a low threshold for reopening a claim, and viewed the phrase "raises a reasonable possibility of substantiating the claim" as "enabling rather than precluding reopening." The Court emphasized that the regulation is designed to be consistent with 38 C.F.R. § 3.159(c)(4), which "does not require new and material evidence as to each previously unproven element of a claim." The Court further held it would be illogical to require that a claimant submit medical nexus evidence when he has provided new and material evidence as to another missing element, as it would "force the veteran to provide medical nexus evidence to reopen his claim so that he could be provided with a medical nexus examination by VA." 

Thus, given the Veteran's hearing testimony, the evidence submitted since the September 1997 rating decision is new and material as it is not redundant of evidence already in the record in September 1997, and relates to the unestablished fact of whether the Veteran's breast cancer is related to service. See 38 C.F.R. § 3.156(a). Accordingly, the issue of entitlement to service connection for breast cancer, including any residuals, is reopened. 38 U.S.C.A. § 5108.

Service Connection for Hypertension

The Veteran is also seeking service connection for hypertension. Applicable law provides that service connection will be granted if it is shown that the veteran suffers from disability resulting from an injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. That an injury occurred in service alone is not enough; there must be chronic disability resulting from that injury. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Additionally, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as cardiovascular-renal disease to include hypertension, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

The service treatment records have been reviewed. In pertinent part, the most recent service examination prior to the Veteran's final period of active service beginning in January 2003, was in July 1998. At this examination, there was no finding of hypertension and her blood pressure was 102/70. In her contemporaneous medical history, she denied any history of high blood pressure. Private treatment records in 2001 and 2002 showed elevated blood pressure readings, but no diagnosis of hypertension was made at that time. 

During her last period of active duty, the Veteran again had elevated blood pressure readings and a clinical record in September 2003 showed that she had borderline high blood pressure. Shortly after her discharge, a private record in February 2004 indicated that the Veteran presented to have her blood pressure checked. She was diagnosed with borderline high blood pressure. By July 2004, the assessment was hypertension and her blood pressure was 160/90. It appears that at time, she was placed on medication. In an August 2004 letter, her private doctor again indicated that she had been diagnosed with hypertension. 

At the RO hearing, the Veteran testified that she was diagnosed with hypertension in 2003 and after service, she sought treatment with a private doctor who prescribed medication. 

Accordingly, given the 160/90 blood pressure reading in July 2004 within a year after discharge, as well as the borderline hypertension finding during the last period of service, the Board finds that when resolving the benefit of the doubt in favor of the Veteran, her blood pressure was predominantly at the compensable level within a year of active service and, in turn, presumed to have incurred during her last period of active duty service. Thus, service connection for hypertension is warranted. See 38 U.S.C.A. § 5107(b). 

Veterans Claims Assistance Act of 2000

With respect to the issue of service connection for hypertension, there is no need to undertake any review of compliance with the Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations in this case since there is no detriment to the Veteran as a result of any VCAA deficiency in view of the fact that the full benefit sought by the Veteran is being granted by this decision of the Board. See generally 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.156(a), 3.159 and 3.326(a). By letter dated in May 2006, the Veteran was furnished notice of the manner of assigning a disability evaluation and an effective date. She will have the opportunity to initiate an appeal from these "downstream" issues if she disagrees with the determinations which will be made by the RO in giving effect to the Board's grant of service connection.

With respect to the issue of service connection for breast cancer, the matter of compliance with the VCAA and implementing regulations will be addressed by the Board in a future decision (if necessary) on the merits of the Veteran's claim. 


ORDER

New and material evidence having been received, the petition to reopen the claim of service connection for breast cancer is granted.

Service connection for hypertension is granted. 

REMAND

In light of reopening the issue of service connection for breast cancer, the Board finds that the Veteran should be afforded a VA examination to determine the etiology of that disability. See generally 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The Veteran is also seeking service connection for a skin disability. She asserts that she began to experience a rash during her first tour in the Southwest Asia Theatre of Operations that has continued to the present. A March 1996 private treatment record shows complaints of a rash. However, the July 1998 service examination prior to her entry to her final period of active service showed that the Veteran's skin was clinically normal. During her last period of active service, a March 2003 record indicated that one of the Veteran's medications could cause a skin rash. April 2003 and June 2003 records showed that the Veteran had tinea versicolor. VA treatment records showed that in February 2008, the Veteran presented with complaints of a skin rash that started in 1991 in Saudi Arabia. The assessment was idiopathic guttate hypomelanosis and atypical stucco keratosis vs. verruca plana vs. other. A biopsy of one keratosis was benign. Follow-up treatment records continued to show an impression of idiopathic guttate hypomelanosis and benign keratoses. 

The Veteran was afforded a VA examination in June 2009. After the examination, the impression was idiopathic guttate hypomelanosis and no evidence of tinea versicolor. However, no etiological opinion was provided for the idiopathic guttate hypomelanosis. Given that no etiological opinion was provided, the Board must find that this examination is inadequate. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (noting that a medical opinion that includes only data and conclusions is accorded no weight). Accordingly, the Board finds that a new medical examination is necessary to make a determination in this case. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (holding that once VA undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided). 

Lastly, it appears that the Veteran receives continuous treatment from the VA. The most recent treatment records in the claims file date from August 2009. A review of the Virtual VA paperless claims processing system also does not reveal any additional treatment records. Thus, the RO should obtain VA treatment records from August 2009 to the present. See 38 C.F.R. § 3.159; Bell v. Derwinski, 2 Vet. App. 611 (1992). 

Accordingly, the case is REMANDED for the following actions:

1. The RO should obtain VA treatment records from August 2009 to the present. 

2. Thereafter, the Veteran should be scheduled for an appropriate VA examination with an oncologist to determine the etiology of her breast cancer. The claims file must be made available to the examiner for review. If the Veteran is unable to report for a VA examination, then the claims file should be sent to an oncologist to offer an opinion based on its review. All medically necessary tests should be completed. After reviewing the claims file and examining the Veteran, the examiner should opine whether it is at least as likely as not (a 50% or higher degree of probability) that the Veteran's breast cancer is related to her first period of service in the Southwest Asia Theatre of Operations, to include exposure to chemicals, such as oil field fires and pesticides, as well as vaccines. A detailed rationale should be provided for all opinions expressed. 

3. The Veteran should be scheduled for an appropriate VA examination to determine the nature, extent and etiology of any current skin disability. The examination should be scheduled when the Veteran's skin disability is active, if possible. The claims file must be made available to the examiner for review. After reviewing the claims file and examining the Veteran, the examiner should clearly delineate all current skin disabilities that have been present since the Veteran filed her claim in March 2006. Thereafter, the examiner should opine as to whether it is at least as likely as not (a 50% or higher degree of probability) that any of the delineated skin disabilities manifested during either period of service in the Southwest Asia Theatre of Operations. 

A detailed rationale for all opinions expressed should be furnished. The examiner should specifically consider and address the incidents of skin rash in service as well as the Veteran's lay statements of pertinent symptomatology since service. 

4. In the interest of avoiding future remand, the RO should then review the examination reports to ensure that the above question has been clearly answered and a rationale furnished for all opinions expressed. If not, appropriate action should be taken to remedy any such deficiencies in the examination reports. 

5. Thereafter, the issues on appeal should be readjudicated. If the benefits sought on appeal are not granted, the Veteran and her representative should be provided with a supplemental statement of the case and afforded the appropriate opportunity to respond thereto. Thereafter, the case should be returned to the Board for further appellate consideration, if otherwise in order.
 
The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).




______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs