Citation Nr: 1522701 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 10-40 764 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York


THE ISSUES

1. Entitlement to service connection for diabetes mellitus, type II, to include as due to herbicide exposure.

2. Entitlement to service connection for cancer of the neck, to include as due to herbicide exposure.

3. Entitlement to service connection for prostate cancer, to include as due to herbicide exposure.
 
4. Entitlement to service connection for bladder cancer, to include as due to herbicide exposure.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

C. Bruce, Counsel


INTRODUCTION

The Veteran served on active duty from November 1967 to March 1968 with additional service in the New York National Guard. 
 
These matters come to the Board of Veterans' Appeals (Board) on appeal from a July 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Buffalo, New York.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

The Veteran contends that he was exposed to herbicides, including Agent Orange while serving at Fort Drum, New York. Specifically the Veteran has stated that there is evidence that herbicides were aerially sprayed over Fort Drum in 1959 and that while the Veteran was not stationed there during that time, he still was exposed because herbicides, in particular dioxins, have a lifespan that can be more than 100 years if it was leached into the soil. The Veteran also provided a statement in support from a fellow soldier that noted that herbicides were sprayed everywhere at Fort Drum and that certain areas had to be closed down due to Agent Orange contamination. A June 2010 formal finding found that there was a lack of information required to corroborate herbicide exposure.

In addition to considering whether the Veteran is due the presumption that herbicides caused some of his disabilities while on active duty, there must also be consideration of the Veteran's disabilities having been caused directly as a result of exposure. In this regard, the record indicates that the Veteran provided positive opinions from his treating physicians with regard to each of his claimed disabilities. Unfortunately those opinions lack any discussion as to the basis for the connection. There is no evidence that the Veteran's file was reviewed or that any examination was performed in conjunction with the opinions. Therefore an examination with opinions regarding whether the Veteran's claimed diabetes mellitus, type II, prostate cancer, bladder cancer, and/or skin cancer of the neck, are related to any exposure to herbicides while stationed at Fort Drum. VA's duty to assist also includes providing a medical examination and/or obtaining a medical opinion when necessary to make a decision on the claim, as defined by law. See 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Schedule the Veteran with an examination to determine the etiology of his diabetes mellitus, type II, to include whether the disability began during active service or are related any incident thereof, to include as due to herbicide exposure at Fort Drum, New York.

The following considerations must govern the examination:

a. The claims file and a copy of this remand must be made available to the physician, who must acknowledge receipt and review of these materials in any report generated.

b. The physician must review all medical evidence associated with the claims file. In particular, the Board draws the physician's attention to the Veteran's contentions that he was exposed to herbicides while stationed at Fort Drum, to include the studies regarding half-life of herbicides. Additionally, please note the statement from the Veteran's friend that herbicides were used at Fort Drum and that some areas were closed off years later due to Agent Orange contamination. Please also note and address the positive private linkage opinion from September 2009. 

c. All indicated tests and studies must be performed.

d. The examiner must provide an opinion as to whether the Veteran's diabetes mellitus, type II, began during active service or is related to any incident of service.

e. The examiner must also address whether the Veteran's diabetes mellitus, type II, is due to herbicide exposure.

f. In all conclusions, the physician must identify and explain the medical bases of his or her opinion with reference to the claims file.

The examiner is advised that the Courts have imposed a requirement on the Board to evaluate any medical opinions by examination of multiple factors, including but not limited to: whether the examiner conducted a personal interview of the Veteran; whether clinical testing was conducted; whether a comprehensive review of the claims file and other medical and factual evidence was considered, including lay statements and other medical opinions, with consideration of conclusions reached and whether they are based on the current state of medical knowledge.

The examiner is also advised that by law, the mere statement that the claims file was reviewed by an examiner with expertise is not sufficient to find an examination or the opinion adequate. In addition, the examination report must include a complete rationale for any opinions expressed. If the examiner feels that the requested opinions cannot be rendered without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

Please send the claims folder to the examiner for review in conjunction with the examination.

2. Schedule the Veteran with an examination to determine the etiology of his skin cancer of the neck, prostate cancer, and bladder cancer, to include whether the disabilities began during active service or are related any incident thereof, to include as due to herbicide exposure at Fort Drum, New York.

The following considerations must govern the examination:

a. The claims file and a copy of this remand must be made available to the physician, who must acknowledge receipt and review of these materials in any report generated.

b. The physician must review all medical evidence associated with the claims file. In particular, the Board draws the physician's attention to the Veteran's contentions that he was exposed to herbicides while stationed at Fort Drum, to include the studies regarding half-life of herbicides. Additionally, please note the statement from the Veteran's friend that herbicides were used at Fort Drum and that some areas were closed off years later due to Agent Orange contamination. Please also note and address the positive private linkage opinions from September 2009.

c. All indicated tests and studies must be performed.

d. The examiner must provide an opinion as to whether the Veteran's skin cancer of the neck, prostate cancer, and bladder cancer, began during active service or are related to any incident of service.

e. The examiner must also address whether the Veteran's skin cancer of the neck, prostate cancer, and bladder cancer, are due to herbicide exposure.

f. In all conclusions, the physician must identify and explain the medical bases of his or her opinion with reference to the claims file.

The examiner is advised that the Courts have imposed a requirement on the Board to evaluate any medical opinions by examination of multiple factors, including but not limited to: whether the examiner conducted a personal interview of the Veteran; whether clinical testing was conducted; whether a comprehensive review of the claims file and other medical and factual evidence was considered, including lay statements and other medical opinions, with consideration of conclusions reached and whether they are based on the current state of medical knowledge.

The examiner is also advised that by law, the mere statement that the claims file was reviewed by an examiner with expertise is not sufficient to find an examination or the opinion adequate. In addition, the examination report must include a complete rationale for any opinions expressed. If the examiner feels that the requested opinions cannot be rendered without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

Please send the claims folder to the examiner for review in conjunction with the examination.

3. After the above has been completed, the RO must review the claims file and ensure that all of the foregoing development actions have been conducted and completed in full. If any development is incomplete, appropriate corrective action must be implemented. If any report does not include adequate responses to the specific opinions requested, it must be returned to the providing examiner for corrective action.

4. Thereafter, and after undertaking any additional development deemed necessary, readjudicate the issue on appeal. If the benefits sought on appeal remain denied, in whole or in part, the Veteran and his representative should be provided with a Supplemental Statement of the Case and be afforded reasonable opportunity to respond. The case should then be returned to the Board for further appellate review, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).