This version includes the errata dated 7Aug07 - e

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0185

WILLIAM P. MCLENDON, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      June 5, 2006   )

*Richard A. LaPointe*, of Marco Island, Florida, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant Counsel; and *Thomas E. Sullivan*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and MOORMAN, *Judges*.

KASOLD, *Judge*: Vietnam War veteran William P. McLendon appeals, through counsel, a January 15, 2004, decision of the Board of Veterans' Appeals (Board) that denied entitlement to service connection for a chronic low-back disability. Mr. McLendon argues that the Board erred in its evaluation of the evidence and that the Secretary failed to provide him with a VA medical examination pursuant to 38 U.S.C. § 5103A. Appellant's Brief (Br.) at 6-7. He also asserts that the Secretary failed to comply with the notice provisions required by 38 C.F.R. § 3.159(b) (2005). Appellant's Br. at 3-6. The Secretary responds that Mr. McLendon received adequate notice and that the Board properly concluded that a VA medical examination was not necessary to make a determination on his claim. Secretary's Br. at 6. For the reasons set forth below, the decision of the Board will be set aside and the matter remanded for readjudication.

# I. BACKGROUND

Mr. McLendon served on active duty in the U.S. Marine Corps from December 1963 to December 1967. Record (R.) at 12. In May 2001, he filed a claim for compensation for a low-back condition. R. at 62-67. Although he did not seek medical treatment at the time, Mr. McLendon stated that, while serving in Spain in 1964 or 1965, he "was standing in a landing craft on the beach that was being loaded when [he] fell back into the boat and landed on my back on a steel lifting ring." R. at 77. Mr. McLendon also submitted medical statements prepared in 2001 by Drs. Maniscalco and Bearison, private physicians, stating that he suffered from a low-back disability. R. at 57, 59. Both opinions also noted that this disability could have been caused by the in-service injury reported by Mr. McLendon. Specifically, Dr. Maniscalco indicated that "[t]he process of degeneration may have been initiated by the fall that he had onto his lower back." R. at 57. In addition, Dr. Bearison stated that Mr. McLendon's "history is that of injuring his back when he fell onto a steel object on a boat" while in the military and suggested that "[i]t is within the realm of medical possibility that Mr. McLendon may have produced significant disk damage to his lumbar spine to initiate the degenerative process which finally led to him needing to have surgery." R. at 59.

In May 2002, without providing Mr. McLendon a VA medical examination, a VA regional office (RO) denied service connection. The RO found that a 20-year gap existed between active service and the first private medical records showing treatment for a low-back disability, and further noted that Mr. McLendon's service medical records did not reflect any injury or diagnosis of a back disability. R. at 321. Mr. McLendon appealed to the Board.

In the decision on appeal, the Board considered private medical records from 1993 forward that confirmed a current low-back disability, as well as Mr. McLendon's assertions of a history of back pain since 1964 or 1965, as recorded in those records. R. at 1-8. It also considered the lack of relevant in-service medical treatment, and specifically noted that Mr. McLendon's service-separation examination did not reveal any back injury or disability. The Board rejected the two 2001 private medical opinions submitted by Mr. McLendon as incompetent because they relied on history provided by Mr. McLendon and were otherwise "speculative and not definitive" with regard to whether his current back disability was service connected. The Board concluded that a VA medical

examination was not warranted because the evidence of record was sufficient to decide the claim. Ultimately, the Board found that the in-service injury had occurred but that it had "resolved without leaving chronic residual disability," and it denied Mr. McLendon's claim. R. at 7. In addition, the Board found compliance with the statutory and regulatory requirements of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, now codified, in part, in 38 U.S.C. §§ 5103(a) and 5103A. R. at 3.

## II. ANALYSIS

### A. Medical Examination Requirement

In disability compensation claims, the Secretary must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the Secretary to make a decision on the claim. *See* 38 U.S.C. § 5103A(d)(2); *Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1355-57 (Fed. Cir. 2003); *Wells v. Principi*, 326 F.3d 1381, 1384 (Fed. Cir. 2003); 38 C.F.R. § 3.159(c)(4)(i). Thus, there are four elements to review to determine if a medical examination is necessary.

The Board's ultimate conclusion that a medical examination is not necessary pursuant to section 5103A(d)(2) is reviewed under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of review. *See* 38 U.S.C. § 7261(a)(3)(A) (Court shall hold unlawful decisions by the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *Marrero v. Gober*, 14 Vet.App. 80, 81 (2000) (holding that the Court reviews the Board's application of the law to the facts under the deferential "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of review); *see also Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004) (reiterating that the "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' standard of review . . . contemplates de novo

review of questions of law"). The Board's determinations that underlie this conclusion, however, are reviewed by this Court using a standard that is multifaceted. *See Butts v. Brown*, 5 Vet.App. 532, 539-40 (1993) (en banc) (discussing the various standards of review).

### 1. Competent Evidence of Current Disability or Recurrent Symptoms

The first element in determining the need for a medical examination is whether there is competent evidence of a current disability or persistent or recurrent symptoms of a disability. As stated, this element requires only (1) an assessment of whether there is evidence of a current disability or persistent or recurrent symptoms thereof and (2) an assessment that such evidence is competent. *See* 38 U.S.C. § 5103A(d)(2)(A); *see also Charles v. Principi*, 16 Vet.App. 370, 374 (2002) (holding that a Board's acknowledgment of a diagnosis of tinnitus in the record was sufficient to establish "'competent evidence that [the claimant] has a current disability'" (quoting 38 U.S.C. § 5103A(d)(2)(A))). Neither requires the weighing of competing facts. The former merely involves an assessment of the existence of such evidence in the record. The latter involves an assessment of whether the evidence is competent.[1]

In this case, although the Board needed to determine only the threshold question of whether there was *competent evidence* of a current disability or recurrent symptoms thereof, it actually went beyond that determination and found as a factual matter that Mr. McLendon currently suffers from a low-back disability. *See* R. at 7. Nothing precludes the Board from weighing the evidence in the record, supportive and nonsupportive of a current disability and making this finding. Moreover, a Board finding that the evidence preponderates for or against the presence of a current disability is a finding of fact, subject to the "clearly erroneous" standard of review, *see Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005) (holding that it is the Board's responsibility to determine the probative weight of the evidence of record); *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991) (same); *see also Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990) (holding that a Board's findings of fact are reviewed under the "clearly erroneous" standard of review), and, when favorable to the claimant, as

---

[1] An assessment of competency can be one of legal competency, which is reviewed de novo, *see Layno v. Brown*, 6 Vet.App. 465, 469 (1994) (holding that "competency" "is a legal concept determining whether testimony may be heard and considered by the trier of fact, while [weight and credibility] is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"), or of factual competency, which is reviewed for clear error, *see Sanders v. Brown*, 9 Vet.App. 525, 529 (1996) (holding that mental "competency" is a factual determination that the Court reviews under the "clearly erroneous" standard of review).

4

it is here, not subject to review by the Court, *see* 38 U.S.C. § 7261(a)(4) (factual findings can be overturned only if clearly erroneous); *Snyder v. Principi*, 15 Vet.App. 285, 299 (2001) (holding that, except where the Board lacked jurisdiction in the first instance, "there is no case or controversy as to a [Board] determination that was favorable to an appellant"). Although the Board did not specifically address the existence of competent evidence of a current disability, its ultimate conclusion that "there is no question that the veteran currently suffers low back disability . . ." necessarily includes this determination and the first element is thus satisfied. *See* R. at 7.

### 2. Establishment of In-Service Event, Injury, or Disease

The second element to consider when determining the need for a medical examination is whether the evidence establishes that the claimant suffered an in-service event, injury, or disease, or "has a disease or symptoms of a disease listed [in certain regulatory provisions] manifesting during an applicable presumptive period, provided the claimant has the required service or triggering event to qualify for that presumption." 38 C.F.R. § 3.159(c)(4)(i)(B); *see also* 38 U.S.C. § 5103A(d)(2). This is a classic factual assessment, involving the weighing of facts, and the Board's findings are subject to the "clearly erroneous" standard of review. *See Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990) (stating that a factual determination involves the analysis and evaluation of evidence as opposed to the application of law and the legal conclusions flowing from it); *see also* 38 U.S.C. § 7261(a)(4); *Butts*, 5 Vet.App. at 535; *Gilbert*, *supra*. In this instance, the Board could have found that the evidence with regard to Mr. McLendon's report of an in-service injury was not credible; however, it did not do so. Rather, it found that Mr. McLendon suffered an in-service back injury (R. at 6-7 ("[E]vidence of record compels a finding that the low back injury which the veteran claims to have suffered in late 1964 or early 1965 was an acute injury . . . . ")), which satisfies the second element.

### 3. Indication that Current Disability May Be Associated with In-Service Event

The third element to consider when assessing the need for a medical examination is whether evidence "indicates" that a disability, or persistent or recurrent symptoms of a disability, "may be associated with the claimant's . . . service," 38 U.S.C. § 5103A(d)(2)(B), or "with another service-connected disability," 38 C.F.R. § 3.159(c)(4)(i)(C). In contrast to the second element, which requires evidence to establish an in-service injury, this element requires only that the evidence

"indicates" that there "may" be a nexus between the two. This is a low threshold. *See* 38 U.S.C. § 5103A(d)(2)(B); *see also Wells*, 326 F.3d at 1384 (requiring the "showing of some causal connection between his disability and his military service"); *Duenas v. Principi*, 18 Vet.App. 512, 517-18 (2004) (stating that, in order to trigger the Secretary's duty to provide a medical examination under section 5103A(d)(2)(B), the evidence of record need only indicate that symptoms of a disability, as opposed to a disability itself, may be associated with his active service); 146 CONG. REC. H9912, H9917 (2000) (statement of Rep. Evans) (suggesting that once the VCAA is enacted, "if a veteran's military records indicate he served as a paratrooper, making multiple jumps during service in Vietnam and the veteran now has evidence of arthritis of the knees that he indicates was due to these jumps, VA will be required to obtain a medical opinion as to whether it is as likely as not that his current arthritis is related to his military service").

Although the underlying facts are found below and those findings of fact are subject to the "clearly erroneous" standard of review, whether those facts "indicate" that a current disability "may be associated" with military service is a matter that is reviewed under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of review. *See* 38 U.S.C. § 7261(a)(3)(A); *Marrero*, *supra*; *see also Kent*, *supra*; *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991) (holding that the Court reviews "de novo" the Board's determination that the facts found by the Board satisfy a statutory threshold requirement that clear and unmistakable evidence has been shown to rebut the presumption of soundness). Such a matter involves the application of facts to the law.

The types of evidence that "indicate" that a current disability "may be associated" with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits, or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. As noted by Representative Evans, the development of arthritis in a person's knees and the fact that that person had been a paratrooper with numerous jumps "indicates" that his disability "may be associated" with his service. *See* 146 CONG. REC. H9912, H9917. Similarly, exposure to "noise from a rifle range, bombing, artillery fire, trucks, and heavy equipment" with credible testimony of ringing in the ears

6

"ever since service" indicates that a hearing disability may be associated with service. *Charles*, 16 Vet.App. at 372-74.

Although the Board in this case noted that Dr. Maniscalco's 2001 opinion suggested that "it is possible" that Mr. McLendon's current back condition was related to his injury in service, and that Dr. Bearison's 2001 opinion stated that "it is within the realm of medical possibility" that Mr. McLendon's current back condition was related to his injury in service, the Board never specifically addressed the third element and never assessed whether these medical opinions, or any other evidence, "indicated" that Mr. McLendon's in-service injury "may be associated" with his current disability. Rather, the Board proceeded to weigh the evidence and determine that the opinions of Drs. Maniscalco and Bearison were speculative and could not *establish* a medical nexus. *See Bloom v. West*, 12 Vet.App. 185, 187 (1999) (speculative medical opinion cannot establish in-service medical nexus to service).

That conclusion, however, does not mean necessarily that the evidence does not "indicate" that there "may be an association" between an in-service injury and a current disability. Indeed, in this instance, although the medical evidence was deemed insufficient to *establish* a nexus, that evidence, together with other evidence of record, may nevertheless be sufficient for the Board to conclude that it "indicates" that Mr. McLendon's current disability "may be associated" with an in-service injury, absent a finding that the evidence itself otherwise warranted no consideration. *See*, *e.g.*, *Coburn v. Nicholson*, 19 Vet.App. 427, 432 (2006) ("reliance on a veteran's statement renders a medical report incredible only if the Board rejects the statements of the veteran"); *Reonal v. Brown*, 5 Vet.App. 458, 461 (1993) (stating that the Board is not bound to accept a physician's opinion when it is based exclusively on the recitations of a claimant that have been rejected by the Board); *Swann v. Brown*, 5 Vet.App. 229, 233 (1993) (noting that a medical opinion premised upon an unsubstantiated account is of no probative value and does not serve to verify the occurrences described). Such a determination should be made by the Board in the first instance.

Mr. McLendon is fully competent to testify to any pain he may have suffered, *see Wells* and *Duenas*, both *supra*; *see also Charles*, 16 Vet.App. at 374-75 (holding that an appellant was capable of providing lay testimony sufficient to "indicate" that his disability could be associated with service); *Falzone v. Brown*, 8 Vet.App. 398, 405 (1995) (claimant competent to testify to visible

injuries and pain); *Espiritu v. Derwinski*, 2 Vet.App. 492, 494-95 (1992) (layperson may provide eye-witness account of medical symptoms), and his testimony can be rejected only if found to be mistaken or otherwise deemed not credible, a finding the Board did not make and the Court cannot make in the first instance, i 38 U.S.C. § 7261(c); *Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (stating that "appellate tribunals are not appropriate fora for initial fact finding"). Absent such a finding, the evidence of Mr. McLendon's in-service injury, testimony of pain since that injury (if ultimately deemed credible), and his current disability "indicate" that his current disability "may be associated" with his in-service injury. *See Charles*, *supra*; 146 CONG. REC. H9912, H9917 (2000).

### 4. Sufficient Competent Medical Evidence To Decide Claim

Addressing the first three elements for when a medical examination is required does not end the analysis.[2] As provided by the fourth element, if there is sufficient competent medical evidence on file for the Secretary to make a decision on the claim, he may proceed to do so without providing a medical examination. 38 U.S.C. § 5103A(d). The key question, however, is whether there is "sufficient competent medical evidence." 38 C.F.R. § 3.159(c)(4)(i); *see* 38 U.S.C. § 5103A(d)(2)(C). Sufficiency of the evidence generally is a question of fact. *See* 38 U.S.C. § 7261(a)(4); *Swann*, 5 Vet.App. at 232 ("A finding concerning service connection, or no service connection . . . is a finding of fact."); *Gilbert*, 1 Vet.App. at 52 (Board's findings of fact are reviewed under the "clearly erroneous" standard of review and may not be reversed or revised unless the Board's findings are not plausible and, therefore, are clearly erroneous).

In this instance, although the Board correctly determined that the opinions of Drs. Maniscalco and Bearison were speculative and did not establish a medical nexus, the Board failed to recognize that these opinions also did not establish that there was no medical nexus. *Cf. Forshey v. Principi,* 284 F.3d 1335, 1363 (Red. Cir. 2002) (en banc) (Mayer, C.J., and Newman, J., dissenting on grounds not relevant here) (distinguishing between the existence of negative evidence and the absence of actual evidence and noting that "[t]he absence of actual evidence is not substantive 'negative evidence'")." Similarly, the Board's findings that Mr. McLendon's service medical records did not

---

[2] By undertaking an analysis of the first three elements, we do not imply that the Board may not conclude at the outset that there is sufficient medical evidence to decide a case – the fourth element – such that a medical examination is not necessary.

8

reflect any injuries to his lower back, that a medical examination conducted at the time of his discharge in 1967 indicated that his spine was clinically normal, and that his personal medical records did not reflect any report of injuries to his lower back at any time before 1993, did not establish that there was no medical nexus. Indeed, when a nexus between a current disability and an in-service event is "indicated," there must be a medical opinion that provides some nonspeculative determination as to the degree of likelihood that a disability was caused by an in-service disease or incident to constitute sufficient medical evidence on which the Board can render a decision with regard to nexus. *See Bloom*, 12 Vet.App. at 187 (speculative medical opinion cannot establish in-service medical nexus to service); *Goss v. Brown*, 9 Vet.App. 109, 114 (1996) (remanding claim for service connection for polyneuropathy because VA examiner's statement that he "could not rule out nutrition deficiency as a prisoner of war" as the cause of the appellant's polyneuropathy was too ambiguous to support the Board's finding that the condition was not service connected).

The Board also erred in its finding that Mr. McLendon's in-service back injury was acute without chronic residual disability. Having found that Mr. McLendon suffered an in-service back injury, the degree of that injury and whether any disabilities resulted therefrom are medical assessments that the Board is not competent to render in the first instance. *See Colvin v. Derwinski*, 1 Vet.App. at 175 (holding that the Board may only consider independent medical evidence in support of its findings and may not substitute its own medical opinion); *see also* 38 U.S.C. § 5107(b); *Mariano v. Principi*, 17 Vet.App. 305, 313-17 (2003); *see also Flash v. Brown*, 8 Vet.App. 332, 339 (1995) ("The Board may not rely on its own unsubstantiated medical conclusions to reject expert medical evidence in the record; rather, the Board may reject a claimant's medical evidence only on the basis of other independent medical evidence."). Because there is no competent medical evidence with regard to whether Mr. McLendon's current disability was more likely than not caused by his in-service injury, the Board's finding that there was sufficient competent medical evidence in the record to make a decision on the claim is not supported by the record and is clearly erroneous.

### 5. *Need for a Medical Examination*

Although a claimant may and should assist in processing a claim, it is the Secretary who has the affirmative, statutory duty to assist the veteran in making his case. *See* 38 U.S.C. § 5103A. It

is the Secretary who is required to provide the medical examination when the first three elements of section 5103A(d)(2) are satisfied, and the evidence of record otherwise lacks a competent medical opinion regarding the likelihood of medical nexus between the in-service event and a current disability. The Board is not competent to provide that opinion. *See Colvin, supra*; *see also Flash*, *supra*.

Section 5103A(d)(2) mandates that a medical examination be provided in disability compensation claim cases when (1) there is competent evidence of a current disability or persistent or recurrent symptoms of a disability (or, as in this case, a finding that Mr. McLendon has a current disability), and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the Secretary to make a decision on the claim. In this instance, the Board never addressed the third element. Because that element includes factual determinations, it should be addressed by the Board in the first instance. *See Hensley*, 212 F.3d at 1263-64 (court of appeals may remand if it determines that a lower tribunal failed to make findings of fact essential to a decision). Moreover, if the Board determines on remand that the third element has been met in this case, it must ensure that the appellant is provided a medical examination pursuant to section 5103A(d) because there would be insufficient medical evidence to decide the claim.

### B. Other Arguments

The Court at this time will not address the appellant's assertion that the Secretary failed to provide adequate notice. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) ("A narrow decision preserves for the appellant the opportunity to argue any claimed errors before the Board at the readjudication."); *see also Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (holding that where remand is appropriate, the Court need not "analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand"). On remand, the appellant is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999), and the Board must consider any such

evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).

### III. CONCLUSION

The January 15, 2004, Board decision is SET ASIDE and the matter REMANDED for action consistent with this opinion.