http://www.va.gov/vetapp16/Files5/1639938.txt

Citation Nr: 1639938 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 07-32 047 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana

THE ISSUE

1. Entitlement to service connection for residuals of postoperative deviated nasal septum (other than deviated nasal septum). 

2. Entitlement to service connection for deviated nasal septum. 

WITNESSES AT HEARING ON APPEAL

The Veteran and E. C. 

ATTORNEY FOR THE BOARD

J. J. Tang, Associate Counsel

INTRODUCTION

The Veteran served on active duty in the U.S. Army from April 1959 to April 1962.

This case is before the Board of Veterans' Appeals (Board) on appeal from a May 2007 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA).

In August 2015, the Board remanded the case to afford the Veteran a hearing before the Board, and the Veteran was afforded such a hearing in July 2016. The case is again before the Board for further appellate proceedings. 

All documents on the Virtual VA paperless claims processing system and the Veterans Benefits Management System have been reviewed, to include the transcript of the July 2016 Board hearing presided over by the undersigned Veterans Law Judge. 

The Board notes that in May 2016, the American Legion entered its appearance as the Veteran's representative. Then, later on the same day, the American Legion attempted to withdraw its appearance as the Veteran's representative by fax. There is no indication that the Veteran was copied on this fax or otherwise had knowledge of the American Legion's attempt to withdraw as the Veteran's authorized representative. Nevertheless, though the American Legion was the Veteran's authorized representative beginning in May 2016, in a June 2016 phone call, the Veteran advised VA that the American Legion will not represent him during the hearing and that he will not have representation going forward. Then, in the July 2016 Board hearing, the Veteran confirmed that he is currently unrepresented and will represent himself. As the claimant retains the right to revoke his representative at any time, the Veteran is considered to be unrepresented at the present time. 

As discussed below, the Board has concluded that the facts are sufficient to grant entitlement to service connection for residuals of postoperative deviated nasal septum (other than deviated nasal septum), which have been diagnosed as nasoseptal deformity with nasoseptal perforation. On the other hand, the facts are in dispute as to whether entitlement to service connection for deviated nasal septum may be warranted. Therefore, the Board finds that it is valid to decide the issue of entitlement to service connection for nasoseptal deformity with nasoseptal perforation, and to remand the issue of entitlement to service connection for deviated nasal septum. See Tyrues v. Shinseki, 631 F.3d 1380 (Fed. Cir. 2011), aff'd in part, Tyrues v. Shinseki, 732 F.3d 1351 (Fed. Cir. 2013).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of entitlement to service connection for deviated nasal septum is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

The competent and credible evidence shows that the Veteran has residuals of postoperative deviated nasal septum (other than deviated nasal septum), currently diagnosed as nasoseptal deformity with nasoseptal perforation, that are etiologically related to service. 

CONCLUSION OF LAW

The criteria for service connection for residuals of postoperative deviated nasal septum (other than deviated nasal septum), diagnosed as nasoseptal deformity with nasoseptal perforation, have been met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

Because the Veteran's claim for entitlement to service connection is granted, as discussed below, any error as to the duty to notify and assist regarding the claim for service connection is harmless error. 

Service Connection

A veteran is entitled to VA disability compensation for service connection if the facts establish that a disability resulted from disease or personal injury incurred in the line of duty or for aggravation of a preexisting injury in the active military, naval or air service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303. 

Generally, to establish a right to compensation for a present disability, a veteran must show (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

The Veteran contends that he currently has residuals of an in-service nasal septectomy (submucous resection of the nasal septum) to correct deflection of the nasal septum. The Veteran is currently diagnosed with residuals of the in-service nasal surgery, diagnosed as nasoseptal deformity with nasoseptal perforation during the appeal period. See September 2007 private medical opinion by Dr. D. M.; April 2007 VA examination. Thus, the current disability is shown. 

As a preliminary matter, the Board acknowledges that the April 2007 VA medical examiner found that the Veteran's nasal septal deviation existed prior to service. However, because the Veteran's April 1959 entry examination noted no sinus or nose defect on entry into active duty service, the presumption of soundness attaches. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b). The medical evidence shows that the Veteran's claimed nasoseptal deformity with nasoseptal perforation are residuals of the Veteran's in-service nasal surgery, as discussed below. There is no indication in the record, to include in the service treatment records, that the Veteran's currently claimed nasoseptal deformity with nasoseptal perforation existed prior to his in-service nasal surgery. Thus, the Board concludes that there is not clear and unmistakable evidence to demonstrate that the Veteran's claimed nasoseptal deformity with nasoseptal perforation preexisted his period of active duty service. Therefore, only for purposes of determining service connection for residuals of an in-service nasal surgery (other than deviated septum), claimed as nasoseptal deformity with nasoseptal perforation, the Veteran's nose and septum is considered to have been in sound condition upon entry into service in April 1959. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b). 
 
Here, the weight of the competent and probative evidence support a finding that the residuals of a nasal surgery, diagnosed as nasoseptal deformity with nasoseptal perforation, are related to service. 

The service records show that the Veteran had a deflection of the nasal septum following a broken nose a child, and he underwent a septectomy in service in August 1959 to correct this deflection of the nasal septum. The August 1959 Operation Report notes that the Veteran underwent a submucous resection to treat his deviated septum and that the there was some difficulty encountered during the surgery. After a few days in the ward, the Veteran was released, and there is no indication that there was further follow-up or examination of the nose. The February 1962 separation examination does not note any defect of the nose or sinuses and does not mention the Veteran's in-service nasal surgery. Therefore, the separation examination has little probative value for purposes of determining the Veteran's nasal condition after his in-service surgery. 

In a September 2007 private medical opinion, the Veteran's treating nasal provider, Dr. D. M., opined that the Veteran's current disability, diagnosed as nasoseptal deformity with nasoseptal perforation, is a residual of the Veteran's in-service nasal septum resection and is a complication from that in-service surgery. Dr. D. M. noted that the separation examination showing normal nose is "somewhat spurious." Dr. D. M. noted that the surgery that the Veteran had in service has known complications regarding residual deformity of the nose despite a good initial structural result and that there are known complications of septal perforations. Dr. D. M. stated that the surgery in service had less than optimal results and that his residual nasoseptal deformity and nasoseptal perforation are complications of that in-service surgery. The September 2007 private medical opinion by Dr. D. M. has significant probative value, because he reviewed the Veteran's service treatment records, provided sufficient rationale for the opinions, covered all relevant bases, and based his opinion on his treatment and examinations of the Veteran since March 2007 (when Dr. D. M. began treating the Veteran after a 2007 nose fracture) as well as on the Veteran's medical history and lay statements. Further, Dr. D. M. determined that the Veteran's nasoseptal perforation was due to a previous nasal surgery after evaluating the Veteran on the operating table. See May 2007 private surgical report. Further, Dr. D. M. is a surgeon with the medical expertise and training to render an opinion as to the etiology of the Veteran's current nasal disability. 

The Board acknowledges that the April 2007 VA examiner stated that the Veteran had no abnormality of the nose at the time of separation. The VA examiner stated that "it is also evident that [the nasal septal deviation with septal perforation] occurred sometime between his separation and the present." The VA examiner also stated that it is possible that his current diagnosis is the result of his nasal surgery in the military. Though the VA examiner stated that he reviewed the claims file, the VA examiner then stated that "it is possible that he had reinjury of the nose and possibly another surgery sometime after his discharge...there is simply no way to know for sure. I cannot resolve this issue without resorting to mere speculation." Thus, the April 2007 VA medical opinion is internally inconsistent. Thus, the Board concludes that this April 2007 VA medical opinion has little probative value and is outweighed by the September 2007 private medical opinion by Dr. D. M. 

On review, the weight of the competent and probative evidence shows that the Veteran's currently diagnosed nasoseptal deformity with nasoseptal perforation is etiologically related to his in-service nasal surgery. For these reasons, service connection for residuals of postoperative deviated nasal septum (other than deviated nasal septum), diagnosed as nasoseptal deformity with nasoseptal perforation, is warranted. 38 C.F.R. § 3.303. 

ORDER

Entitlement to service connection for residuals of postoperative deviated nasal septum (other than deviated nasal septum), diagnosed as nasoseptal deformity with nasoseptal perforation, is granted. 

REMAND

The Veteran claims that his currently diagnosed deviated nasal septum is etiologically related to service or was aggravated by an in-service nasal surgery. The Board has granted service connection for postoperative residuals, diagnosed as nasoseptal deformity with nasoseptal perforation. 

However, regarding deviated nasal septum itself, the Veteran's service treatment records show symptoms due to deviated septum and tend to indicate that he had a deviated septum prior to service, although his entry examination does not note a nose or sinus defect. The Veteran underwent surgery in service to treat this in-service deviated septum. Post-service treatment records also note deviated septum. See e.g., May 2006 VA ENT Consult (showing that the veteran has had problems with left nasal airway obstruction since service and that when seen by an ENT specialist several years ago, he was told about the deviated septum; the Veteran was assessed with deviated nasal septum). Then, the 2007 private medical evidence from Dr. D.M. shows that the Veteran had an acute nose fracture in 2007 and that he has residual nasoseptal deviation with some improvement after his 2007 nose surgery. 

The Veteran was afforded a VA examination in April 2007, in which the VA examiner stated that the Veteran had no abnormality of the nose at the time of separation. The VA examiner also stated that "it is also evident that [the nasal septal deviation with septal perforation] occurred sometime between his separation and the present." The VA examiner also stated that it is possible that his current diagnosis [of deviated septum] is the result of his nasal surgery in the military. Though the VA examiner stated that he reviewed the claims file, the VA examiner then stated that "it is possible that he had reinjury of the nose and possibly another surgery sometime after his discharge...there is simply no way to know for sure. I cannot resolve this issue without resorting to mere speculation." This medical opinion is internally inconsistent. 

These facts are relevant to the claim but raise additional medical questions. It is unclear whether the Veteran's current deviated nasal septum clearly and unmistakably preexisted service. If the current deviated septum did not clearly and unmistakably preexist service, it is unclear whether the Veteran's current deviated septum is related to the Veteran's in-service nasal surgery. If the current deviated septum did clearly and unmistakably preexist service, it is unclear whether the Veteran's in-service surgery aggravated his preexisting deviated septum beyond the natural progress of a deviated septum, particularly given the fact that the Veteran had a nose fracture in 2007. Accordingly, the Veteran should be afforded a new VA examination to determine the nature and etiology of deviated nasal septum. McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Please contact the Veteran and request that he provide information as to any outstanding treatment records, VA or non-VA, pertinent to his deviated nasal septum, to include the ENT specialist the Veteran reported seeing a few years prior to 2006. 

The Veteran should be asked to authorize the release of any outstanding pertinent non-VA medical records. 

2. Please obtain outstanding relevant VA treatment records, to include any outstanding records dating from 2002 or 2003 to present, when the Veteran reported he first began treatment with VA. 

3. Please schedule the Veteran for a VA ENT examination to determine the nature and etiology of the Veteran's deviated nasal septum. Make the claims file available to the examiner for review of the case. The examiner is asked to please provide opinions as to the following: 

(a) Opine whether it is clear and unmistakable (obvious, manifest, and undebatable) that the Veteran's current deviated nasal septum pre-existed service. 

(b) If so, opine whether it is clear and unmistakable (obvious, manifest, and undebatable) that the pre-existing deviated nasal septum WAS NOT aggravated (i.e., permanently worsened) during service or whether it is clear and unmistakable (obvious, manifest, and undebatable) that any increase in severity of the deviated nasal septum was due to the natural progress of the deviated nasal septum. 

The examiner's attention is invited to the Veteran's reports that he continued to have left nasal obstruction after his in-service nasal surgery and prior to his 2007 nose fracture. 

(c) If any responses in (a) and (b) above are negative, opine whether it is at least as likely as not (a probability of 50 percent or greater) that the Veteran's current deviated nasal septum manifested in service or is etiologically related to service, to include as a result of the in-service nasal surgery. 

The examiner is asked to explain the reasons behind any opinions expressed and conclusions reached. Please note that the Veteran is already service-connected for residuals of postoperative deviated nasal septum (other than deviated nasal septum), currently diagnosed as nasoseptal deformity with nasoseptal perforation.

Please also note that the April 2007 VA medical opinion did not address where it is "clear and unmistakable" that the deviated septum preexisted service and was not aggravated in service. It appears that the April 2007 VA examiner also did not review the 2007 private treatment records from Scott and White Medical Center. 

4. Thereafter, adjudicate the issue on appeal, and furnish the Veteran a supplemental statement of the case if a matter is not resolved to the Veteran's satisfaction. Provide an opportunity to respond before the case is returned to the Board. 

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2015).

____________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs