Citation Nr: AXXXXXXXX
Decision Date: 07/30/21 Archive Date: 07/30/21

DOCKET NO. 190222-3926
DATE: July 30, 2021

ORDER

Entitlement to total disability based on individual unemployability due to service-connected disabilities (TDIU) effective November 2, 2018, is granted. 

REMANDED

Entitlement to service connection for right eye optic neuritis with decreased visual acuity is remanded. 

Entitlement to service connection for Axenfeld's syndrome is remanded.

Entitlement to service connection for sleep apnea, to include as secondary to service-connected posttraumatic stress disorder (PTSD), is remanded. 

Entitlement to service connection for hypertension, to include as secondary to service-connected PTSD, is remanded. 

Entitlement to service connection for chronic dermatitis is remanded. 

Entitlement to service connection for a cervical spine disorder is remanded. 

Entitlement to service connection for right upper extremity carpal tunnel syndrome is remanded. 

Entitlement to service connection for left upper extremity carpal tunnel syndrome is remanded. 

Entitlement to service connection for a right knee disorder is remanded. 

Entitlement to service connection for a left knee disorder is remanded. 

Entitlement to a TDIU prior to November 2, 2018, is remanded. 

FINDING OF FACT

Effective November 2, 2018, the Veteran's service-connected disabilities render him unable to obtain and maintain substantially gainful employment consistent with his education, training, and experience. 

CONCLUSION OF LAW

The criteria for entitlement to a TDIU effective November 2, 2018, are met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16. 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active military service from November 1972 to August 1979 and from December 1990 to July 1991, with additional reserve service. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a December 2018 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO). In January 2021, the Veteran testified at a video conference hearing before a Veterans Law Judge. A transcript of the hearing is included in the claims file.

By way of background, the Regional Office (RO) denied entitlement to service connection for, in pertinent part, sleep apnea, hypertension, stenosis of the cervical spine; entitlement to a TDIU; as well as petitions to reopen claims for service connection for right and left upper extremity carpal tunnel syndrome, chronic dermatitis, Axenfeld's syndrome and right eye optic neuritis in an October 2013 decision. In a March 2015 rating decision, the RO denied entitlement to service connection for right and left knee disabilities. In November 2013 and April 2015, the Veteran filed timely Notices of Disagreement (NODs). Two separate statements of the case (SOC) were issued in April 2016 and the Veteran filed a timely VA Form 9 (Appeal to the Board of Veterans' Appeal) in June 2016. The case was certified to the Board under the legacy system in March 2017. In July 2018, the Veteran withdrew his legacy appeal with regard to those issues and indicated that he wished to have his claims reviewed under the higher-level review lane under Rapid Appeals Modernization Program (RAMP). 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with the Department of Veterans Affairs (VA)'s decision on their claim to seek review. The Veteran chose to participate in VA's test program, RAMP. This decision has been written consistent with the new AMA framework.

The Veteran selected the Higher-Level Review lane when he submitted his RAMP election form in July 2018. Accordingly, a December 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested a hearing by a Veterans Law Judge (VLJ). Such a hearing was held in January 2021.

The Board notes that, in the December 2018 rating decision, the AOJ denied the above-mentioned service connection claims and adjudicated them on the merits. Consequently, as the AOJ implicitly found that new and relevant evidence was received so as to warrant readjudication of such claims and the Board is bound by such favorable findings, the Veteran's claims will be reviewed on a de novo basis. 38 C.F.R. §§ 3.104(c), 20.801.

Additionally, the Veteran has separate appeals regarding entitlement to service connection for diabetes and erectile dysfunction, as well as entitlement to special monthly compensation (SMC) under the AMA. These appeals originate from separate appeal streams and will be addressed in separate Board decisions.

1. Entitlement to a TDIU beginning November 2, 2018

The Veteran asserts that he is unable to work as a result of his service-connected disabilities. At that outset, the Board notes that entitlement to a TDIU prior to November 2, 2018 is addressed in the Remand section below. 

A TDIU is warranted where the combined schedular evaluation for service-connected disabilities is less than total, or 100 percent. 38 C.F.R. § 4.16(a). VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the veteran is precluded from obtaining or maintaining any gainful employment, by reason of his or her service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16. Under 38 C.F.R. § 4.16(a), if there is only one such disability, it must be rated at 60 percent or more to qualify for benefits based on individual unemployability. If there are two or more such disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16(a). Disabilities resulting from a common etiology will be considered as one disability for TDIU purposes. 38 C.F.R. § 4.16(a)(2).

For the period on appeal beginning November 2, 2018, the Veteran is service-connected for PTSD, rated 70 percent disabling; tinnitus, rated 10 percent disability; and degenerative arthritis of the thoracolumbar spine, rated 10 percent beginning July 7, 2020. His combined rating for this period has been 70 percent from November 2, 2018 to July 7, 2020 and 80 percent thereafter. Therefore, the Board finds that the Veteran has met the threshold schedular criteria for assignment of a TDIU beginning November 2, 2018. 38 C.F.R. § 4.16. 

The Veteran reported that he last worked full-time in September 2010, at which time he became too disabled to work as a result of his service-connected disabilities. Prior to September 2010, the Veteran worked performing maintenance tasks, as well as custodial work. The record evidence shows that his highest level of education is a GED. 

In light of the Veteran's occupational background and the functional limitations resulting from his service-connected disabilities, the Board finds that he has been unable to secure and follow substantially gainful employment for the appeal period beginning November 2, 2018. In this regard, March 2019 and August 2020 VA examination reports show significant impairment associated with his service-connected PTSD. The March 2019 and August 2020 VA examiners reported that the Veteran's PTSD was productive of, among other symptoms, near-continuous panic, neglect of personal hygiene, panic attacks more than once a week, and difficulty in establishing and maintaining effective work and social relationships. Each examiner also opined that the Veteran's PTSD was most productive of occupational and social impairment with deficiencies in most areas, to include work. At his January 2021 hearing before the Board, the Veteran also described how his PTSD made it difficult for him to get along with co-workers, as indicated that he was prone to irritability and anger. 

A February 2021 VA examination report also indicates that the Veteran's service-connected lower back disability has a significant effect on his employability. To that end, the examiner indicated that the Veteran is unable to stand or walk for prolonged periods of time or perform strenuous activity. Additionally, the record reflects that the Veteran's lower back disability requires daily prescription pain medication as well as muscle relaxants. 

Based on the foregoing, the Board finds that given the Veteran's background and limitations, the Veteran would not be able to secure or maintain such employment. To that end, the Veteran had worked as a custodian for several years. The Board notes that such a profession undoubtedly requires prolonged walking, sitting, and standing, as well as a potential for strenuous activity. Moreover, the Veteran's PTSD significantly interferes with his occupational functioning. Thus, the Board finds that the impairment caused by the Veteran's various service-connected disabilities prevents him from securing and maintaining employment consistent with his industrial background and education. See Ray v. Wilkie, 31Vet. App.58, 73 (2019).

Therefore, reasonable doubt must be resolved in favor of the Veteran and entitlement to a TDIU beginning November 2, 2018, is warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, Vet. App. 49 (1990).

REASONS FOR REMAND

The Board finds that additional development is required before the remaining claims on appeal may be decided. Specifically, the Board finds that pre-decisional duty to assist errors were made; thus, a remand is necessary to cure those errors. 

1. Service connection for right eye optic neuritis is remanded.

2. Service connection for Axenfeld's syndrome is remanded.

The Veteran contends that his right eye optic neuritis is related to active service and that it worsened after his Desert Storm service. A December 2018 rating decision included favorable findings that an August 2011 VA treatment record indicates that the Veteran is legally blind due to retinitis pigmentosa. Favorable findings are binding on the Board. 38 U.S.C. § 5104A.

The record shows that the Veteran was diagnosed with optic neuritis in 1979. A June 1982 examination report notes that the Veteran experienced blurred vision and Axenfeld's syndrome, as well as optic neuritis. At his January 2021 hearing before the Board, the Veteran explained further that his eyesight began deteriorating while deployed to Southwest Asia, although it had already been an issue for several years prior to that time, and that he sought treatment for his eyes in 1979. In this case, the Veteran has not been afforded a VA examination in connection with his readjudicated claim, and there is insufficient competent medical evidence to make a decision on the claim. An examination should have been conducted in accordance with McClendon v. Nicholson, 20 Vet. App. 79 (2006). Therefore, this duty to assist error should be remedied on remand by providing the Veteran a VA examination to determine whether his right eye optic neuritis and/or Axenfeld's syndrome are related to his service as VA medical opinions are warranted to address the etiology of his claimed eye disabilities. The failure to provide an etiology opinion is a pre-decisional duty to assist error. 

3. Service connection for sleep apnea is remanded.

The Veteran contends that his sleep apnea is related to active service or due to his service-connected PTSD. A December 2018 rating decision included favorable findings that an April 2018 VA treatment note shows a diagnosis of sleep apnea and that the Veteran uses a continuous airway presume machine (CPAP). Favorable findings are binding on the Board. 38 U.S.C. § 5104A.

The Veteran contends that he first began experiencing symptoms of sleep apnea in service. See August 2011 and January 2012 VA Forms 21-4138. The Veteran reiterated at his Board hearing that he began experiencing difficulty with sleep during his period of service in Southwest Asia. The record reflects that the Veteran has a current diagnosis of obstructive sleep apnea. The Board notes further, that service connection for PTSD was granted by the AOJ in a February 2011 rating decision. To date, no VA medical opinions have been obtained in connection with the current appeal with regard to the Veteran's sleep apnea. Therefore, the Board finds that a VA medical opinion is warranted to address the nature and etiology of his sleep apnea. See McLendon, supra. The failure to provide an etiology opinion is a pre-decisional duty to assist error. 

4. Service connection for hypertension is remanded. 

The Veteran contends that his hypertension that is related to active service, to include his service-connected PTSD. A December 2018 rating decision included favorable findings that a July 2018 VA treatment note shows a diagnosis of hypertension. Favorable findings are binding on the Board. 38 U.S.C. § 5104A.

The Veteran has asserted that hypertension was diagnosed while he was on active duty. See January 2012 VA Form 21-4138; November 2013 VA Form 21-0958. He also reiterated his contentions at a January 2021 hearing before the Board indicating that he believed his hypertension was related to stressful duties he performed during active service, or in the alternative, to his service-connected PTSD. The record reflects a diagnosis of hypertension. The Board notes further, that service connection for PTSD was granted by the AOJ in a February 2011 rating decision. To date, no VA medical opinions have been obtained in connection with the current appeal with regard to the Veteran's hypertension. Therefore, the Board finds that a VA medical opinion is warranted to address the nature and etiology of his hypertension. See McLendon, supra. The failure to provide an etiology opinion is a pre-decisional duty to assist error. 

5. Service connection for dermatitis is remanded.

The Veteran contends that he experiences dermatitis that is related to active service. A December 2018 rating decision included favorable findings that service treatment records document complaints of a rash on the back in 1975 noted to be acneform lesions; groin rash due to fungus in September 1975; groin rash in July 1976 noted to be tinea cruris; and contact dermatitis of the hands in July 1977. Additionally, an August 2014 VA treatment note indicates that the Veteran experienced dermatitis of the head and trunk. Favorable findings are binding on the Board. 38 U.S.C. § 5104A.

The Veteran reiterated and explained his contentions further in a January 2021 hearing before the Board that he experienced dermatitis on the back of his ear. He indicated that he had experienced dermatitis on his arms shortly after returning from service in Southwest Asia. As noted, the record reflects a diagnosis of dermatitis. To date, no VA medical opinions have been obtained in connection with the current appeal with regard to the Veteran's dermatitis. Therefore, the Board finds that a VA medical opinion is warranted to address the nature and etiology of his dermatitis. See McLendon, supra. The failure to provide an etiology opinion is a pre-decisional duty to assist error. 

6. Service connection for a cervical spine disability is remanded.

The Veteran contends that he experiences a cervical spine disability that is related to active service and specifically his duties in service. A December 2018 rating decision included favorable findings that a private treatment note shows that the Veteran underwent a posterior cervical laminectomy C3-C4, C5-C6 with bilateral foraminotomies and C3-C7 posterior instrumentation and fusion with posterolateral local bone grafting in November 2010. Favorable findings are binding on the Board. 38 U.S.C. § 5104A.

The Veteran reiterated and explained his contentions further in a January 2021 hearing before the Board that he began having cervical spine pain after service in the 1990's, which the Veteran attributed to carrying heavy gear during his period of service in Southwest Asia. To date, no VA medical opinions have been obtained in connection with the current appeal with regard to the Veteran's cervical spine disability. Therefore, the Board finds that a VA medical opinion is warranted to address the nature and etiology of his cervical spine disability. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). The failure to provide an etiology opinion is a pre-decisional duty to assist error. 

7. Service connection for bilateral carpal tunnel syndrome is remanded.

The Veteran contends that he experiences bilateral upper extremity carpal tunnel syndrome that is related to active service and specifically due to wear and tear on his arms in service. A December 2018 rating decision included favorable findings that an April 1995 VA examiner diagnosed bilateral upper extremity carpal tunnel syndrome. Favorable findings are binding on the Board. 38 U.S.C. § 5104A.

The Veteran reiterated and explained his contentions in a January 2021 hearing before the Board that he began feeling pain in his hands in the 1990's. He indicated that he believed his carpal tunnel syndrome is related to general in-service wear and tear on his arms. To date, no VA medical opinions have been obtained in connection with the current appeal with regard to the Veteran's claimed right and left upper extremity carpal tunnel syndrome. Therefore, the Board finds that a VA medical opinion is warranted to address the nature and etiology of his claimed carpal tunnel syndrome. See McLendon, supra. The failure to provide an etiology opinion is a pre-decisional duty to assist error. 

8. Service connection for bilateral knee disabilities is remanded. 

The Veteran contends that his right and left knee disabilities are related to active service. A December 2018 rating decision included favorable findings that a July 1975 service treatment record shows a report of bilateral knee pain when walking, assessed as knee pain. Also, a February 2015 VA examiner diagnosed bilateral knee joint osteoarthritis. Favorable findings are binding on the Board. 38 U.S.C. § 5104A.

The Veteran asserts that with his job in service, his knees took a lot of wear and tear; he reported that he tried not to go on sick call too often although he did go to sick call for his knees while stationed in Korea in 1976-1977. See April 2015 VA Form 21-0958; see also October 2014 VA Form 21-4138. He reiterated his contentions at a January 2021 hearing before the Board stressing that he began experiencing knee pain during service, which he attributes to his time in infantry. The record reflects diagnoses of right and left knee arthritis. Although the AOJ obtained a VA examination and medical opinion in February 2015 in which the examiner opined that the Veteran's knee condition was less likely than not incurred in or caused by service, the examiner failed to address the Veteran's competent report of chronic knee pain in service and that he often did not go to sick call for knee symptoms. The Board finds that there is a pre-decisional duty to assist error by the AOJ in failing to obtain a clarifying opinion in this regard. Therefore, the Board finds that further VA medical opinion is warranted to address the nature and etiology of his right and left knee disabilities. See McLendon, supra. 

9. Entitlement to a TDIU prior to November 2, 2018 is remanded.

Prior to November 2, 2018, the Veteran did not have a single disability rated at 60 percent disabling, or a disability rated at least 40 percent disabling with a combined total of 70 percent or more. As such, the rating percentage criteria for consideration of a TDIU under 38 C.F.R. § 4.16(a) have not been not met at any point prior to November 2, 2018. 

Although the Veteran does not meet the rating requirements for consideration of a TDIU on a schedular basis under 38 C.F.R. § 4.16(a), a TDIU may be granted alternatively on an extraschedular basis under § 4.16(b) if it is established that the Veteran is indeed unemployable on account of his service-connected disabilities. However, the Board is precluded from granting a TDIU on an extraschedular basis in the first instance, and must refer the matter to the Director of Compensation Service for the initial adjudication. See 38 C.F.R. § 4.16(b); Barringer v. Peake, 22 Vet. App. 242 (2008). If and only if, the Director of the Compensation Service or designee determines that an extraschedular TDIU is not warranted does the Board then have jurisdiction to decide the issue on its merits.

To date, the issue of entitlement to a TDIU prior to November 2, 2018 has not been considered on an extraschedular basis under 38 C.F.R. § 4.16(b). Thus, because there is evidence that the Veteran may have been unemployable during this appeal period due to service-connected disabilities, referral of the issue for entitlement to a TDIU prior to November 2, 2018 to the Director of the Compensation Service is warranted. 

The matters are REMANDED for the following action:

1. Obtain an etiology opinion from an appropriate medical examiner to determine the nature and etiology of the Veteran's right eye optic neuritis with blurred vision and Axenfeld's syndrome. The need for physical examination or telehealth evaluation is left to the discretion of the medical professional offering the medical opinion. The record must be made available to the examiner for review, and the examiner should indicate that the record was reviewed in connection with the examination. All indicated tests and studies should be accomplished and the findings then reported in detail.

Based on the review of the record, the examiner must provide an opinion as to whether it is at least as likely as not (50 percent or better probability) that any currently present eye disability, to include optic neuritis, blurred vision, and Axenfeld's syndrome, had its onset during his active service, was aggravated beyond the natural progression of the disorder in service, or is otherwise etiologically related to such service. The examiner must consider the Veteran's lay statements regarding the onset and continuity of his symptoms. The examiner must consider the Veteran's statement that he experienced eye problems during active service and that he sought treatment for his eyes in 1979. 

A complete rationale should be given for each opinion expressed. In this regard, a discussion of the facts and medical principles involved would be considerable assistance to the Board.

2. Obtain an etiology opinion from an appropriate medical examiner to determine the nature and etiology of the Veteran's sleep apnea. The need for physical examination or telehealth evaluation is left to the discretion of the medical professional offering the medical opinion. The record must be made available to the examiner for review, and the examiner should indicate that the record was reviewed in connection with the examination. All indicated tests and studies should be accomplished and the findings then reported in detail.

Based on the review of the record, the examiner must provide an opinion as to the following:

(A) Is at least as likely as not (50 percent or better probability) that the Veteran's sleep apnea had its onset during his active service or is otherwise etiologically related to such service?

(B) Is at least as likely as not (50 percent or better probability) that sleep apnea was caused OR aggravated beyond the natural progression of the disorder by his service-connected PTSD?

A complete rationale should be given for each opinion expressed. In this regard, a discussion of the facts and medical principles involved would be considerable assistance to the Board.

3. Obtain an etiology opinion from an appropriate medical examiner to determine the nature and etiology of the Veteran's hypertension. The need for physical examination or telehealth evaluation is left to the discretion of the medical professional offering the medical opinion. The record must be made available to the examiner for review, and the examiner should indicate that the record was reviewed in connection with the examination. All indicated tests and studies should be accomplished and the findings then reported in detail.

Based on the review of the record, the examiner must provide an opinion as to the following:

(A) Is at least as likely as not (50 percent or better probability) that the Veteran's hypertension had its onset during his active service, manifested within one year of service discharge, or is otherwise etiologically related to such service?

(B) Is at least as likely as not (50 percent or better probability) that hypertension was caused OR aggravated beyond the natural progression of the disorder by his service-connected PTSD?

A complete rationale should be given for each opinion expressed. In this regard, a discussion of the facts and medical principles involved would be considerable assistance to the Board.

4. Obtain an etiology opinion from an appropriate medical examiner to determine the nature and etiology of the Veteran's dermatitis. The need for physical examination or telehealth evaluation is left to the discretion of the medical professional offering the medical opinion. The record must be made available to the examiner for review, and the examiner should indicate that the record was reviewed in connection with the examination. All indicated tests and studies should be accomplished and the findings then reported in detail.

Based on the review of the record, the examiner must provide an opinion as to whether it is at least as likely as not (50 percent or better probability) that any currently present dermatitis had its onset during his active service, or is otherwise etiologically related to such service. The examiner must consider the Veteran's lay statements regarding the onset and continuity of his symptoms. The examiner must consider the multiple notations of skin problems documented in the Veteran's service treatment records. 

A complete rationale should be given for each opinion expressed. In this regard, a discussion of the facts and medical principles involved would be considerable assistance to the Board.

5. Obtain an etiology opinion from an appropriate medical examiner to determine the nature and etiology of the Veteran's cervical spine disability. The need for physical examination or telehealth evaluation is left to the discretion of the medical professional offering the medical opinion. The record must be made available to the examiner for review, and the examiner should indicate that the record was reviewed in connection with the examination. All indicated tests and studies should be accomplished and the findings then reported in detail.

Based on the review of the record, the examiner must provide an opinion as to whether it is at least as likely as not (50 percent or better probability) that any currently present cervical spine disability, to include stenosis, had its onset during his active service, or is otherwise etiologically related to such service. The examiner must consider the Veteran's lay statements regarding the onset and continuity of his symptoms. 

A complete rationale should be given for each opinion expressed. In this regard, a discussion of the facts and medical principles involved would be considerable assistance to the Board.

6. Obtain an etiology opinion from an appropriate medical examiner to determine the nature and etiology of the Veteran's claimed right and left upper extremity carpal tunnel syndrome. The need for physical examination or telehealth evaluation is left to the discretion of the medical professional offering the medical opinion. The record must be made available to the examiner for review, and the examiner should indicate that the record was reviewed in connection with the examination. All indicated tests and studies should be accomplished and the findings then reported in detail.

Based on the review of the record, the examiner must provide an opinion as to whether it is at least as likely as not (50 percent or better probability) that any currently present right and/or left upper extremity carpal tunnel syndrome or its residuals had its onset during his active service, or is otherwise etiologically related to such service. The examiner must consider the Veteran's lay statements regarding the onset and continuity of his symptoms. 

A complete rationale should be given for each opinion expressed. In this regard, a discussion of the facts and medical principles involved would be considerable assistance to the Board.

7. Obtain an addendum etiology opinion from an appropriate medical examiner to determine the nature and etiology of the Veteran's right and left knee disabilities. The need for further physical examination or telehealth evaluation is left to the discretion of the medical professional offering the medical opinion. The record must be made available to the examiner for review, and the examiner should indicate that the record was reviewed in connection with the examination. All indicated tests and studies should be accomplished and the findings then reported in detail.

Based on the review of the record, the examiner must provide an opinion as to whether it is at least as likely as not (50 percent or better probability) that any currently present right and left knee disabilities, to include osteoarthritis, had its onset during his active service, or is otherwise etiologically related to such service. The examiner must consider the Veteran's lay statements regarding the onset and continuity of his symptoms. The examiner must consider the July 1975 in-service complaint of bilateral knee pain and Veteran's reported that he was reluctant to go to sick call for recurrent knee symptomatology. 

A complete rationale should be given for each opinion expressed. In this regard, a discussion of the facts and medical principles involved would be considerable assistance to the Board.

 (Continued on the next page)

 

8. Refer the issue of entitlement to a TDIU prior to November 2, 2018 to the Director of Compensation Service for consideration of an extraschedular rating pursuant to 38 C.F.R. § 4.16(b). 

 

 

S. L. Kennedy

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Christopher O'Donnell

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.