Citation Nr: 1641946 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 10-38 314 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Whether new and material evidence has been received to reopen the claim of entitlement to service connection for Wolff-Parkinson-White Syndrome (heart disability).

2. Entitlement to service connection for lupus.

3. Entitlement to service connection for Wolff-Parkinson-White Syndrome (heart disability).

4. Entitlement to compensation under 38 U.S.C. § 1151 for lupus.

5. Entitlement to compensation under 38 U.S.C. § 1151 for a heart disability.



REPRESENTATION

Appellant represented by: Andrew L. Wener, Attorney


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

C. Jones, Associate Counsel


INTRODUCTION

The Veteran had active military service from August 1965 to August 1967 and from September 1967 to March 1977. He is in receipt of the Purple Heart medal.

These matters come before the Board of Veterans' Appeals (Board) on appeal from an August 2009 rating decision by the Department of Veterans' Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

The Veteran testified before the undersigned at a Board Hearing in April 2013. A transcript of that hearing has been reviewed and associated with the claims file.

These matters were before the Board in July 2014, at which time they were remanded for further evidentiary development. 

Additionally, in the July 2014 Board decision, the issues of whether new and material evidence has been received to reopen the claims of entitlement to service connection for a back disability, an acute respiratory disease, and bilateral knee disability; entitlement to service connection for peripheral vascular disease, avoidance of direct sunlight, arthritis, bilateral shoulder pain, deep vein thrombosis, cholelithiasis, enlarged prostate, blistered feet, pulmonary embolism, a speech impediment, loss of muscle capacity, lichen simplex, joint/muscle pain, loss of coordination/balance, osteoporosis, thrombocytopenia, residuals of black scorpion bite, metatarsalgia, weight loss, pleural effusion, surgical scars, partial loss of motion, hypertension, hyperlipidemia, fluid buildup, erectile dysfunction, difficulty swallowing, and cystic growths; entitlement to an increased rating for PTSD, a skin disability, migraine headaches, tinnitus, bilateral hearing loss, and residual scar from fragment wound to the left forearm and neck; entitlement to a special monthly compensation (SMC) based on aid and attendance; and entitlement to an earlier effective date for the award of a 100 percent rating for PTSD were remanded for the issuance of a statement of the case. A statement of the case was issued in October 2015. Thereafter, the Veteran filed a substantive and requested a Board hearing. The issues were certified to the Board in December 2015. Although an appeal has been perfected, these issues will not be addressed in this opinion because the requested hearing is pending scheduling.

The Board observes that in an August 2015 rating decision, the RO denied entitlement to SMC. The Veteran filed a timely notice of disagreement. However, as noted herein, the issue has been certified to the Board for appeal. Therefore, no additional action is required at this time; the issue is already in appellate status.

The Board acknowledges that in the July 2014 rating decision, the issue of service connection for lupus was denied and remanded for further evidentiary development. As detailed herein, the Board has vacated the previous denial of service connection for lupus to ensure that the Veteran is afforded due process of the law. 

The issues of entitlement to service connection for a heart disability and lupus and entitlement to compensation under 38 U.S.C. § 1151 for lupus are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).






FINDINGS OF FACT

1. In the July 2014 decision, the Board denied service connection for lupus; that same Board decision remanded the issue of service connection for lupus for further evidentiary development.

2. In a July 1993 rating decision, the RO denied service connection for a heart disability. The Veteran filed a notice of disagreement, but did not file a substantive appeal and no new and material evidence was received within the appeal period.

3. The evidence received since the July 1993 rating decision is not duplicative or cumulative of evidence previously of record and it raises a reasonable possibility of substantiating the Veteran's claim of service connection for a heart disability.

4. The weight of the evidence is against a finding that the Veteran has an additional heart disability caused by VA treatment.


CONCLUSIONS OF LAW

1. The July 2014 Board denial of entitlement to service connection for lupus is vacated. 38 U.S.C.A. § 7104 (a) (West 2014); 38 C.F.R. § 20.904 (2015).

2. The criteria for reopening the claim of service connection for a heart disability have been met. 38 U.S.C.A. §§ 5108, 7105 (West 2014); 38 C.F.R. §§ 3.156, 20.302, 20.1103 (2015).

3. The criteria for compensation under 38 U.S.C.A. § 1151 for a heart disability have not been met. 38 U.S.C.A. §§ 1151, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.361 (2015).





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist Veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015).

The VA's duty to notify was satisfied through letters dated in June 2008, July 2008, and March 2009, which notified the Veteran of the elements to substantiate his claims. See Dingess/Hartman. v. Nicholson, 19 Vet. App. 473 (2006). 

VA must also make reasonable efforts to assist the appellant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2015).

Service treatment records are associated with the claims file. Post-service medical treatment records have been obtained. As requested in the Board's July 2014 remand directives, outstanding VA and private medical records have been retrieved. The Veteran has not identified any additional records that should be obtained prior to a Board decision. Therefore, VA's duty to further assist in locating additional records has been satisfied. 

The Veteran was provided a VA examination in May 2009 for his claim of entitlement to compensation under 38 U.S.C. § 1151 for a heart disability. As instructed in the Board's July 2014 remand, an addendum opinion was obtained in March 2015. The VA examination and opinions are adequate for the purposes of the § 1151 claim for a heart disability adjudicated herein, as they involved a review of the Veteran's pertinent medical history as well as a clinical evaluation of the Veteran, and provided an etiological opinion with supporting rationale. See generally Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

Thereafter, the RO issued a supplemental statement of the case in October 2015. The Board finds that there has been substantial compliance with the Board's previous remand directives. See D'Aries v. Peake, 22 Vet. App. 97, 106 (2008); Stegall v. West, 11 Vet. App. 268 (1998).

In sum, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

I. Order to Vacate

The Board may vacate an appellate decision at any time upon request of the appellant or his or her representative, or on the Board's own motion, when an appellant has been denied due process of law or when benefits were allowed based on false or fraudulent evidence. 38 U.S.C.A. § 7104 (a) (West 2014); 38 C.F.R. § 20.904 (2015). 

In the July 2014 decision, the Board denied and remanded the Veteran's claim of entitlement to service connection for lupus. In light of the internal inconsistencies in the July 2014 Board decision, and in order to ensure that the Veteran is afforded due process of the law, the Board's July 2014 decision is vacated with regard to the issue of service connection for lupus. As detailed below, the claim is remanded for further evidentiary development.

II. Petition to Reopen

Applicable law provides that a final decision cannot be reopened unless new and material evidence is presented. 38 U.S.C.A. § 5108.

New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. 38 C.F.R. § 3.156(a). New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened and must raise a reasonable possibility of substantiating the claim. Id. 

The credibility of the evidence is presumed in determining whether new and material evidence has been submitted. Justus v. Principi, 3 Vet. App. 510, 513 (1992). The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." See Shade v. Shinseki, 
24 Vet. App. 110 (2010). Moreover, in determining whether this low threshold is met, consideration need not be limited to consideration of whether the newly submitted evidence relates specifically to the reason why the claim was last denied, but instead should ask whether the evidence could reasonably substantiate the claim were the claim to be reopened, either by triggering the VA's duty to assist or through consideration of an alternative theory of entitlement. Id. at 118.

Factual Background

Initially, the Veteran's claim of service connection for a heart disability (noted as Wolff-Parkinson-White syndrome) was denied in a December 1992 rating decision. The claim was denied because service treatment records were unremarkable for a heart problem and there was no evidence of a heart condition to a compensable degree within one year of discharge from military service. Thereafter, in a July 1993 rating decision, the RO again denied service connection for a heart disability. The claim was denied because service treatment records were negative for a heart condition and there was no evidence to show that the Veteran developed a heart condition to a compensable degree within one year of discharge from military service. It was noted that the additional cited evidence pertained to treatment more than 9 years after discharge from military service. The evidence of record at the time of the July 1993 rating decision included available VA treatment records from July 1977 to December 1992 and service treatment records. 

The evidence of record suggests that the Veteran filed a timely notice of disagreement and a statement of the case was issued in August 1993. However, the Veteran did not file a substantive appeal and no new and material evidence was received within a year of its issuance. Thus, the July 1993 decision is final. 38 U.S.C.A. § 7105(c); 38 C.F.R. §§ 3.156(b), 20.302, 20.1103; Bond v. Shinseki, 659 F.3d 1362, 1367-68 (Fed. Cir. 2011).

The evidence received since the July 1993 rating decision includes additional VA medical records, private treatment records, statements from the Veteran, and a transcript of the August 2013 Board hearing.

Analysis

After a review of the evidence, the Board finds that new and material evidence has been received to reopen the claim of service connection for a heart disability. The evidence is new, as it was not part of the record at the time of the July 1993 rating decision. It is also material, as it relates to an unestablished fact necessary to substantiate the claim. In this regard, in a June 2008 statement, the Veteran asserted that his heart disability preexisted military service and was aggravated by such service. In testimony provided during the Board hearing, he asserted that prior to discharge from military service, a heart condition was found and he was given medication to regulate the disability. Such statements were not previously of record.

In light of the foregoing, the Board finds that new and material evidence has been received and the claim of service connection for a heart disability is reopened. However, further development is needed prior to addressing the merits of the claim. This is discussed in the remand section below.

III. Compensation under 38 U.S.C. § 1151 for a Heart Disability

A veteran may be awarded compensation for additional disability, not the result of willful misconduct, if the disability was caused by hospital care, medical or surgical treatment, or examination furnished the Veteran under any law administered by VA, either by a VA employee or in a VA facility as defined in 38 U.S.C.A. § 1701(3)(A) (West 2014), and the proximate cause of the disability was (1) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care, medical or surgical treatment, or examination, or (2) an event not reasonably foreseeable. 38 U.S.C.A. § 1151; 38 C.F.R. § 3.361(c), (d)(1), (d)(2). 

To determine whether a Veteran has additional disability, VA compares the Veteran's condition immediately before the beginning of the hospital care, medical or surgical treatment, or examination to the Veteran's condition after such care, treatment, or examination has stopped. 38 C.F.R. § 3.361(b). VA considers each involved body part or system separately. Id. 

If additional disability is shown, actual causation is required. To establish causation, the evidence must show that the hospital care, medical or surgical treatment, or examination resulted in the additional disability or death. 38 C.F.R. § 3.361(c) (2015). Merely showing that a veteran received care, treatment, or examination and that a veteran has an additional disability or died does not establish cause. 38 C.F.R. § 3.361(c)(1). 

To establish that the proximate cause of a disability was the result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA, the claimant must show either (1) VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or (2) VA furnished the care, treatment, or examination without the Veteran's informed consent. 38 C.F.R. § 3.361 (d)(1). 

Alternatively, to establish that the proximate cause of a disability was an event that was not reasonably foreseeable, the evidence must demonstrate that a reasonable health care provider could not have foreseen the event. The event does not have to be "completely unforeseeable or unimaginable" but it must "be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided." 38 C.F.R. § 3.361 (d)(1).

To determine whether there was informed consent, VA will consider whether the health care providers substantially complied with the requirements of 38 C.F.R. § 17.32. 38 C.F.R. § 3.361 (d)(1)(ii). Informed consent is the freely given consent that follows a careful explanation by the practitioner to the patient of the proposed diagnostic procedure or course of treatment. 38 C.F.R. § 17.32 (c). The informed consent must be appropriately documented in the health record and a signature is required for all treatments and procedures that require the use of sedation, anesthesia, or narcotic analgesia, that are considered to produce significant discomfort to the patient, or that require injections of any substance into a space of body cavity. 38 C.F.R. § 17.32 (d)(1).

Factual Background

The Veteran asserts that he is entitled to compensation under 38 U.S.C. § 1151 for a heart disability. Specifically, he contends that he developed a heart disability as a result of taking procainamide and heparin, which were prescribed by VA. Additionally, he contends that informed consent was not properly provided in this case. 

A review of the claims file reveals that on April 7, 2006, the appellant was admitted to the hospital for unstable Wolff- Parkinson-White syndrome. At that time he reported symptoms of syncope and wide complex tachycardia on Holter. He was treated with procainamide and referred for possible ablation. The Veteran was discharged from the hospital on April 10, 2006. In a discharge medication consult, it was noted that the Veteran was provided information regarding what to expect from the medication and drug side effects. Additionally, it was confirmed that the Veteran and family members were given written information and verbalized adequate understanding. On April 27, 2006, the Veteran presented with complaints of ringing in the ears and neck following the use of procainamide. It was recommended changing the schedule of medication. The appellant was advised to notify his healthcare provided if symptoms worsened or failed to improve.

Thereafter, in a May 18, 2006 cardiology consult, it was noted that the Veteran was evaluated for ablation but he declined the procedure. The record indicated that the physician discussed the risks of not having the ablation versus the long term use of procainamide. In a September 28, 2006 cardiology record, it was noted that the Veteran had a history of symptomatic Wolff-Parkinson-White syndrome for 30 years. He was started on pronestyl and was referred to EP for ablation, which he decided not to attend at his own risk. It was noted that the Veteran had no symptoms. There was no pre-syncope, syncope, chest pain, SOB, or palpitations. It was noted that although the Veteran was aware of the side effects of the medication, he indicated that he wanted to continue the pronestyl treatment as long as he could. Additionally, he decided against ablation and stated that he would consider the procedure next year if his condition worsened. 

In VA treatment records dated in July 2007 it was noted that the Veteran developed drug induced lupus, secondary to procainamide and heparin induced thrombopenia. 

The Veteran was afforded a VA examination in May 2009. Following evaluation of the Veteran, the examiner diagnosed procainamide induced lupus erythematosus manifested as polyserositis, including pleural and pericardial effusion, synovitis, joint pain, and swelling, resolved; heparin induced thrombocytopenia, resolved; and residual muscle wasting and weakened, etiology unknown, possibly related to drug induced lupus. 

An addendum opinion was obtained in March 2015. The examiner stated that he could not rule out the possibility that the persistent muscle weakness and wasting experienced by the Veteran surrounding the development of drug-induced lupus erythematosus with procainamide therapy was not related to procainamide therapy. Therefore, it was at least as likely as not that the Veteran incurred additional disability of muscle weakness and wasting as a result of VA medical care. However, he opined that there was no residual disability related to the use of heparin. There was no indication that the Veteran sustained an additional heart disability as a result of VA medical care.

Analysis

After a review of the evidence, the Board finds that compensation under 38 U.S.C. § 1151 for a heart disability is not warranted. In this regard, VA treatment records demonstrate that the Veteran was admitted for treatment for a previously diagnosed heart disability. While the VA examiner opined that drug induced lupus, muscle weakness and wasting, and heparin induced thrombocytopenia were the result of medication prescribed by the VA for treatment of the appellant's heart condition, there is no indication that the Veteran has been diagnosed with an additional heart disability as a result of VA treatment. The Board notes that the diagnosed drug induced lupus is remanded herein. Further, the diagnosed muscle weakness and wasting and thrombopenia will be adjudicated in a separate decision. 

In sum, there is no evidence of an additional disability heart disability stemming from VA care. As such, a determination regarding causation is not required.

In light of the forgoing, the Board finds that a preponderance of the evidence is against the Veteran's claim for compensation for a heart disability on the basis of 38 U.S.C.A. § 1151, and the claim must be denied. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


ORDER

The July 2014 Board denial of service connection for lupus is vacated.

New and material evidence having been received, the petition to reopen the claim of service connection for a heart disability is granted.

Entitlement to compensation under 38 U.S.C. § 1151 for a heart disability is denied.


REMAND

The Board finds that a remand of the remaining issues is necessary to ensure that there is a complete record upon which to decide the Veteran's appeal. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.



Heart Disability

The Veteran asserts that his heart disability preexisted military service and was aggravated by such service. Specifically, he contends that he was diagnosed with and treated for symptoms related to his heart condition during military service. 

The pre-induction examination associated with the Veteran's first period of service showed normal findings. Hence, the Veteran is presumed to be sound on entry to that period of service. 38 U.S.C.A. § 1111. However, his diagnosed Wolff-Parkinson-White syndrome is a congenital condition and thus there is 
clear and unmistakable evidence of a heart disorder preexisting service. The question for consideration is whether there is also clear and unmistakable evidence that such heart disorder was NOT aggravated by either period of active service. In this regard, a review of the service treatment records demonstrates that the Veteran was treated for complaints of chest pain during his second period of active service.

The Board notes that the Veteran has not been afforded a VA examination with regard to his claim of service connection for a heart disability. As the appellant has asserted that the complaints of chest pain during service are related to his current heart disability, a VA examination should be provided on remand. McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Lupus

The Veteran asserts that his diagnosed lupus is secondary to his heart disability. Thus, the claim of service connection for lupus is inextricably intertwined with the issue of service connection for a heart disability remanded herein, and thus the Board will defer consideration of the appeal with regard to entitlement to service connection for lupus. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final Board decision on one issue cannot be rendered until the other issue has been considered).



Compensation under 38 U.S.C. § 1151 for Lupus

The Veteran asserts that he is entitled to compensation under 38 U.S.C. § 1151 for lupus. In relevant part, he contends that informed consent was not properly provided. Specifically, asserts that he was not made aware of the risk that he would develop lupus as a result of taking procainamide and heparin for his heart disability.

As detailed herein, in the April 10, 2006 discharge medication consult, it was noted that the Veteran was provided information regarding what to expect from the medication and drug side effects. Further, VA medical records indicate that the Veteran's physician discussed the risks of long term use of procainamide. However, the records do not specifically state whether the Veteran was advised of the possibility of developing lupus as a side effect of procainamide and heparin. 

In light of the forgoing, the Board finds that an addendum opinion must be obtained regarding whether drug induced lupus is a side effect of procainamide and heparin that is generally disclosed to patients.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA examination to determine the nature and etiology of his heart disability. The claims file, including this remand, must be reviewed by the examiner and such review should be noted in the examination report. 

After reviewing the record and examining the Veteran, the examiner should provide an opinion regarding the following:

a. Was the Veteran's Wolff-Parkison-White syndrome clearly and unmistakably NOT aggravated (permanently worsened beyond its natural progress) by either period of active service? (Put another way, is there even a small degree of evidence showing in-service aggravation- if so, the symptoms/findings upon which this is based should be noted). 

b. Does the Veteran have any other heart disorder that is at least as likely as not due to active service?

The examiner must provide a rationale for all opinions provided. If an opinion cannot be made without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made.

The examiner must consider the Veteran's complaints of chest pain and diagnosis of asthma, bronchitis, and gastritis during service, and the relationship, if any, to the Veteran's heart disability.

The examiner must consider the lay statements of record. The examiner is advised that laypersons are competent to report symptoms and treatment, and that their reports must be taken into account in formulating the requested opinion.

2. Forward the claims file to the examiner who provided the May 2009 VA examination and the March 2015 opinion, or to a comparably qualified examiner if he is unavailable, to obtain an addendum opinion. The claims file must be reviewed and such review should be noted in the opinion or in an addendum opinion. 

The examiner should provide an opinion as to whether the development of drug induced lupus constitutes a risk that a reasonable health care provider would have disclosed to the Veteran in connection with the informed consent procedures.

The examiner must provide a rationale for all opinions provided. If an opinion cannot be made without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made.

3. Undertake any additional development deemed appropriate.

4. Readjudicate the claims on appeal. If the benefits sought are not granted to the appellant's satisfaction, he and his representative should be provided with a supplemental statement of the case. An appropriate period of time should be allowed for response

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs