﻿Citation Nr: AXXXXXXXX
Decision Date: 09/29/20 Archive Date: 09/29/20

DOCKET NO. 190905-32745
DATE: September 29, 2020

ORDER

New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for hypothyroidism.

New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for a neck disability.

New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for a back disability.

New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for coronary artery disease.

Entitlement to service connection for coronary artery disease is granted.

REMANDED

Entitlement to service connection for hypothyroidism, to include as due to herbicide agent exposure and/or radiation exposure is remanded.

Entitlement to service connection for a neck disability is remanded.

Entitlement to service connection for a back disability is remanded.

FINDINGS OF FACT

1. New evidence has been received since the November 2017 and March 2018 rating decisions that is relevant to the issues of entitlement to service connection for hypothyroidism, a neck disability, a back disability and coronary artery disease.

2. The Veteran was exposed to herbicide agents at Andersen Air Force Base in Guam in 1970.

3. The Veteran has a current diagnosis of coronary artery disease.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claims of entitlement to service connection for hypothyroidism, a neck disability, a back disability, and coronary artery disease are met. 38 C.F.R. § 3.156(d).

2. The criteria for entitlement to presumptive service connection for coronary artery disease are met. 38 U.S.C. §§ 1110, 1116; 38 C.F.R. §§ 3.307, 3.309(e).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Air Force from October 1968 to June 1972. 

In June 2019 the Veteran filed a petition to reopen previously denied claims of entitlement to service connection for hypothyroidism, coronary artery disease, neck, and back disabilities. In August 2019, a Department of Veterans Affairs (VA) Regional Office (RO) issued a rating decision denying the petition to readjudicate the claims of entitlement to service connection for hypothyroidism, coronary artery disease, neck, and back disabilities because the Veteran did not submit new and relevant evidence. The Veteran filed a notice of disagreement to the Board of Veterans’ Appeals (Board) in September 2019 and elected the evidence submission lane. The 90-day time period to submit evidence has elapsed and all additional evidence was submitted within that time period.

The new and material evidence issues regarding his hypothyroidism, neck, back, and coronary artery disease have been recharacterized to reflect the evidentiary standard required under the Appeals Modernization Act (AMA). 38 C.F.R. §§ 3.2501(a)(1), 19.2. The Agency of Original Jurisdiction (AOJ) considered the merits of the service connection claims in its August 2019 AMA rating decision. 38 U.S.C. § 7104(a). Additionally, the AOJ found that the Veteran had current diagnoses of hypothyroidism, cervical spine degenerative arthritis, generalized lumbar spondylosis, degenerative disc disease, multilevel facet arthropathy with dextroscoliosis, and coronary artery disease. The Board is bound by these favorable findings absent clear and unmistakable error, which is not demonstrated here. 38 C.F.R. § 3.104(c).

New and Relevant Evidence

1. New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for hypothyroidism.

2. New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for coronary artery disease.

3. New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for a neck disability.

4. New and relevant evidence has been received to readjudicate the claim of entitlement to service connection for a back disability.

Except as otherwise provided, a claimant or his or her authorized representative, if any, who disagrees with a prior VA decision may file a supplemental claim (see §3.1(p)(2)) by submitting in writing or electronically a complete application (see §3.160(a)) on a form prescribed by the Secretary any time after the agency of original jurisdiction issues notice of a decision, regardless of whether the claim is pending (see §3.160(c)) or has become finally adjudicated (see §3.160(d)). If new and relevant evidence is presented or secured with respect to the supplemental claim, the AOJ will readjudicate the claim taking into consideration all of the evidence of record. 38 C.F.R. § 3.2501. VA will readjudicate a claim if new and relevant evidenced is presented or secured. 38 C.F.R. § 3.156(d). “Relevant evidence” is evidence that tends to prove or disprove a matter at issue in a claim. 38 C.F.R. § 3.2501(a)(1).

The question in this case is whether the Veteran submitted evidence after the prior decision on his claims for service connection for hypothyroidism, neck, back, and coronary artery disease, and if so, whether that evidence is new and relevant to his claims.

The most recent prior denials of the Veteran’s neck and back claims in November 2017 and hypothyroidism and coronary artery disease claims in March 2018 were based on a lack of an in-service event and nexus between the Veteran’s hypothyroidism, neck, back, and coronary artery disabilities and service. Regarding his neck and back claims, in his June 2018 Notice of Disagreement (NOD) the Veteran stated that his disabilities are due to duties of his military occupational specialty (MOS) as a construction equipment operator, including operating heavy machinery and loading and unloading supplies eight to twelve hours per day, which resulted in daily static sitting, awkward postures, and whole-body vibration for many hours. Additionally, the Veteran submitted articles in June 2018 and September 2019 that suggest a relationship between his neck and back and operating heavy machinery as he did during service, particularly whole-body vibration. 

As to his hypothyroidism and coronary artery disease, the Veteran submitted multiple lay statements from himself and other veterans regarding recalling exposure to herbicide agents and the aftermath of witnessing brown foliage while serving at Andersen Air Force Base (AAFB) in Guam and several articles that support the use of herbicide agents in Guam. The Board finds that these lay statements and supporting articles relate his current disabilities to service and constitute new evidence that was submitted after the prior November 2017 (neck and back) and March 2018 rating decisions (hypothyroidism and coronary artery disease) that is relevant to his claims. Thus, readjudication of the claims is warranted.

Service Connection

5. Entitlement to service connection for coronary artery disease is granted.

The Veteran seeks service connection for a heart disability on a presumptive basis due to exposure to herbicide agents at AAFB in Guam. Specifically, he maintains that he noticed that in areas where there should have been a lot of green foliage, there was brown vegetation instead. He asserts that he later learned that Sgt. Leroy Foster and others were tasked with spraying multiple areas in Guam with herbicide agents, including at AAFB. The Veteran states that he had daily skin contact with and inhalation of herbicide agents and other solvents/chemicals while operating a vacuum sweeper for parking areas and taxi ways, which would “exhaust a wet mist” of chemicals and water after frequent rainfall. He also he maintains that the drinking and bathing water was contaminated and that there were other hazardous contaminants including aircraft fuel, trichloroethylene (TCE), and Strontium 90 and exposure to radiation that was associated with AAFB operations. See September 2017 VA Form 21-526EZ and Correspondence. As the discussion below is favorable regarding his exposure to herbicide agents in Guam, no other theory of entitlement will be addressed further.

Service connection may be established for a disability resulting from injury or disease incurred during or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. 

Generally, to establish service connection the evidence must show: (1) the existence of a present disability; (2) in- service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred in or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Certain diseases shall be service-connected if the Veteran was exposed to an herbicide agent during service, if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C. § 1113 and 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e). Ischemic heart disease is listed under 38 C.F.R. § 3.309(e) as a disability being presumptively related to herbicide exposure. 75 Fed. Reg. 53,202, 53,216 (Aug. 31, 2010). Ischemic heart disease is defined as “acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal’s angina.” 38 C.F.R. § 3.309(e).

Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Here, the Veteran has a current diagnosis of coronary artery disease. See August 2017 VA treatment record; see also August 2019 AMA decision (noting a favorable finding of a current coronary artery disease diagnosis). Thus, the question becomes whether the Veteran was exposed to herbicide agents in service. The Board finds that he was. 

The evidence of records shows the Veteran was stationed at AAFB in Guam from June 1970 to September 1970. See, e.g., July 1970 STRs showing treatment at AAFB in Guam. In support of his claim, the Veteran submitted articles showing that the sources of hazardous substances at AAFB included unlined landfills, drum storage and disposal areas, chemical storage areas, fire training areas, waste storage areas, a laundry, and industrial and flight line operations. Substances known to be involved in AAFB’s operations included solvents such as TCE and paint thinners, dry cleaning fluids and laundry products, fuels and gasoline, pesticides, antifreeze, aircraft cleaning compounds, and polychlorinated biphenyls (PCBs). The articles specifically stated that Guam was used as a storage space for Agent Orange and that it was sprayed in Guam from 1955 to the 1960s. The articles also described that some areas where the hazardous wastes were stored were a threat to the groundwater and that contaminated of at AAFB occurred through mixing of water pumped through the pipelines and the wells and dumping/spilling hazardous waste in the storm drains which flowed into AAFB’s primary source of water. Groundwater sampling indicated the presence of TCE at concentration levels that the Environmental Protection Agency (EPA) stated were unacceptable and posed a health risk. Critically, the articles included witness statements from Sgt. Foster who personally recalled spraying thousands of gallons of Agent Orange at AAFB during his 10-year service with the 43rd Supply Squadron Fuels Division. His testimonials were supported by fellow Sgt. Ralph Stanton, who was stationed at AAFB from March 2, 1969 to March 31, 1970 and confirmed witnessing Sgt. Foster spraying chemicals that made him “sick [to his] stomach.” Sgt. Stanton also described what Sgt. Foster wore while spraying these chemicals including rubber gloves, rubber boots, a face shield, and a rubber apron. See “Agent Orange Concerns Beyond U.S. Vietnam Veterans,” submitted in December 2017; see also “Ep. 149 ‘Agent Orange in Guam, Part 1: Sprayed and Betrayed’,” submitted in December 2017; “Faces of Agent Orange”, submitted in December 2017; “Agent Orange on Guam confirmed”, submitted in December 2017; “My Exposure at the Drum Storage lot (EPA Site 27) and at the Fire Training Area (EPA Site 26);” “Contamination of Drinking Water at Andersen Air Force Base,” submitted in December 2017; “Some veterans got Agent Orange benefits, many more still waiting,” submitted in September 2019; and “Military Veterans Advocacy: Agent Orange effects go beyond Vietnam,” submitted in September 2019.

The Veteran also submitted statements from various servicemembers who also reported transporting, using, and/or storing herbicide agents, including Agent Orange and pesticides, at AAFB in Guam in the late 1960’s and 1970’s. One servicemember specifically stated that “he knows for a fact” that Agent Orange was used for vegetation control along the taxiways, runways, fuel lines, buildings, and barracks at AAFB and that Sgt. Foster would spray chemicals around the fuel pipelines and pumping stations around the island during normal base maintenance. Other servicemembers recalled seeing brown foliage on the tropical island, which should have been green. See lay statements submitted in December 2017 and September 2019.

The Board finds that with the resolution of reasonable doubt in favor of the Veteran, the evidence of record shows that the Veteran was exposed to herbicide agents, pesticides, and other environmental contaminants between June 1970 and September 1970 while serving at AAFB. Therefore, exposure to herbicide agents is conceded, and entitlement to presumptive service connection for coronary artery disease is warranted. 38 U.S.C. §§ 1110, 1116, 5107; 38 C.F.R. §§ 3.102, 3.307, 3.309(e).

REASONS FOR REMAND

6. Entitlement to service connection for hypothyroidism, to include as due to herbicide agent exposure and/or radiation exposure, is remanded.

The Veteran maintains that his hypothyroidism is due to herbicide agent and/or radiation exposure during service at AAFB in Guam. An August 2017 VA treatment record diagnoses hypothyroidism; (see also August 2019 AMA decision (noting a favorable finding of a current hypothyroidism diagnosis). Additionally, the above decision concedes the Veteran’s exposure to herbicide agents at AAFB. To this end, even if a disease or condition is not a presumptive disorder for which the Veteran is entitled to a regulatory presumption of service connection for a given disability, the claim must nevertheless be reviewed to determine whether service connection can be established on a direct basis. Rucker v. Brown, 10 Vet. App. 67, 71 (1997) (Ramey v. Brown, 9 Vet. App. 40, 44 (1996); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). Thus, the Board finds that the low standard detailed in McLendon is met as the evidence suggests his hypothyroidism may be related to service and a VA examination and medical opinion is warranted and should be obtained on remand to correct this pre-decisional duty to assist error. 38 U.S.C. § 20.802(a); see also McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

7. Entitlement to service connection for a neck disability is remanded.

8. Entitlement to service connection for a back disability is remanded.

The Veteran asserts that his neck and back disabilities are due to the cumulative impact of duties of his MOS as a construction equipment operator, including operating heavy machinery and loading and unloading supplies eight to twelve hours per day. As a result, he maintains that his disabilities were caused by the daily static sitting, awkward postures, and whole-body vibration for many hours while performing his duties. See September 2017 Correspondence and June 2018 NOD. The August 2019 AMA decision noted favorable findings of current diagnoses of cervical spine degenerative arthritis, generalized lumbar spondylosis, degenerative disc disease, and multilevel facet arthropathy with dextroscoliosis; (see also March 2011 and November 2015 VA treatment records). Thus, the Board finds that the low standard detailed in McLendon is met as the evidence suggests his neck and back disabilities may be related to service and a VA examination and medical opinion is warranted and should be obtained on remand to correct this pre-decisional duty to assist error. 38 U.S.C. § 20.802(a); see also McLendon, 20 Vet. App. 79.

The matters are REMANDED for the following action:

1. Schedule the Veteran for a VA examination to determine the nature and etiology of his currently diagnosed hypothyroidism (see August 2017 VA treatment record and August 2019 AMA decision). The examiner must address the following:

Please opine as to whether it is at least as likely as not (50 percent or greater probability) that hypothyroidism had its onset in service or is otherwise related to service, to include as a result of conceded exposure to herbicide agents and reports of exposure to non-ionizing radiation therein. In addressing this question, please address: (a) the Veteran’s presumed exposure to herbicide agents; (b) the Veteran’s reported exposure to non-ionizing radiation in service (September 2017 Correspondence), which you should assume as true; and (c) medical literature submitted in December 2017 discussing a relationship between herbicide agent exposure and hypothyroidism. Please provide a discussion of whether a nexus relationship between the Veteran’s hypothyroidism and service is “medically consistent” with (a)-(c) above. The examiner is advised not to rely on the lack of availability of presumptive service connection for hypothyroidism as the sole basis for a negative opinion, as the opinion will be returned as inadequate. 

A complete rationale must be provided for all opinions expressed. If for any reason the examiner is unable to provide a medical opinion, he or she should provide a rationale for that conclusion (e.g. whether there is any additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge).

2. Schedule the Veteran for a VA examination to determine the nature and etiology of his currently diagnosed cervical spine degenerative arthritis, generalized lumbar spondylosis, degenerative disc disease, and multilevel facet arthropathy with dextroscoliosis (see March 2011 and November 2015 VA treatment records and August 2019 AMA decision). The examiner must address the following:

Please opine as to whether it is at least as likely as not (50 percent or greater probability) that each diagnosed back and neck disorder (cervical spine degenerative arthritis, generalized lumbar spondylosis, degenerative disc disease, and multilevel facet arthropathy with dextroscoliosis) had its onset in service or is otherwise related to service, to include as a result of the cumulative impact of duties of his MOS as a construction equipment operator, including operating heavy machinery and loading and unloading supplies eight to twelve hours per day resulting in daily static sitting, awkward postures, and whole-body vibration for many hours. 

In addressing this question, please: (a) discuss whether a nexus between the Veteran’s back and neck disabilities and service is “medically consistent” with his above reports of sustaining neck and back injuries due to daily static sitting, awkward postures, and whole-body vibration for many hours, which you should assume as true; and (b) discuss the articles, “Heavy Mobile Equipment-Ergonomics and the Prevention of Musculoskeletal Injuries” and “Whole-body vibration and postural stress among operators of construction equipment: A literature review” submitted by the Veteran June 2018 and September 2019, respectively. Otherwise, the opinion will be returned as inadequate.

A complete rationale must be provided for all opinions expressed. If for any reason the examiner is unable to provide a medical opinion, he or she should provide a rationale for that conclusion (e.g. whether there is any additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge).

 

 

S. BUSH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board R. Asante

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.